[Civ. No. 38233. Second Dist., Div. Two. Dec. 8, 1971.]

JEAN W. THOMAS, Plaintiff and Appellant, v.
STUART L. WRIGHT et al., Defendants and Respondents.

## COUNSEL

Anderson, Adams & Bacon and Robert L. Bacon for Plaintiff and Appellant.

Riemer & Anderson and Richard L. Riemer for Defendants and Respondents.

## OPINION

**HERNDON, Acting P. J.**—Appellant brought this action seeking cancellation and enjoining the foreclosure of a deed of trust on her home executed by her to secure payment of obligations assumed by her under the provisions of an instrument entitled "Automobile Leasing Contract." The trial court rendered judgment in favor of defendants and dissolved the previously granted injunction against the foreclosure.

The findings of fact of the trial court are not disputed. The sole issue on appeal is the correctness of the court's conclusion of law that the contract here in question does not constitute a "Conditional Sale Contract" within the purview of the Automobile Sales Finance Act, commonly known as the Rees-Levering Act, and found in sections 2981 et seq. of the Civil Code. The act prohibits the seller from taking as security for the contract balance the title to or a lien upon any property other than the motor vehicle which is the subject matter of the conditional sale.

We conclude that the instant contract falls within the coverage of the act with the result that the deed of trust taken by respondents as security

for the obligations created by the contract is invalid and unenforceable under the provisions of Civil Code section 2984.2.[1] It follows that appellant is entitled to a judgment cancelling the deed of trust. (Cf. *Brewer* v. *Home Owners Auto Finance Co.,* 10 Cal.App.3d 337 [89 Cal.Rptr. 231].)

In May of 1966, appellant, finding herself in need of a car in order to get to her job as a grocery checker, went to a local Ford dealer, Barclay Ford, in order to purchase one. Mrs. Thomas was a divorcee with a high school education and was very inexperienced in business matters.

After agreeing with Barclay to purchase a certain car, she was informed that "the bank" would not accept her credit because of the fact that a car previously purchased by her had been repossessed. Barclay Ford then referred her to Mr. Stuart L. Wright of respondent Home Owners Auto Finance Company. On May 25, 1966, following her discussions with Mr. Wright, appellant executed the "Automobile Leasing Contract" and the trust deed in question.

Mrs. Thomas took possession of the automobile, and made the required down payment of $300. Thereafter she made five monthly payments. On March 7, 1967, after she had become delinquent on three monthly payments, respondent finance company repossessed said automobile and commenced foreclosure proceedings to recover the balance of $1,850.77 claimed to be due under the terms of the lease contract.

Since the controlling issue in this case will be determined by the legal effect of the lease agreement, we shall now closely examine its provisions. Respondent finance company agreed to make available to appellant the 1965 Ford she had chosen at Barclay Ford for a maximum term of 48 months in consideration of a payment of $300 to be made by her on May 26, 1966, and 48 monthly installments of $74.09 each due on the 26th day of each month thereafter.

The total of the rental payments for the full term of the contract, referred to therein as the "total lease price," is $3,856.32. The contract provides that "for the purposes of this lease" the "cash value" of the vehicle is $2,325.80. The sum of $1,530.52, representing the difference between the "total lease price" and the agreed "cash value" of the vehicle is referred to as the "rental mark-up."

---

[1] Section 2984.2 of the Civil Code reads in pertinent part as follows: "No agreement in connection with a conditional sale of a motor vehicle for the inclusion of title to or a lien upon any personal or real property, other than the motor vehicle which is the subject matter of the conditional sale . . . as security for payment of the contract balance, shall be enforceable."

Paragraph 2 of the contract provides that upon termination of the lease, the rental value is to be computed by subtracting from the total lease price of $3,856.32 an amount equal to all rental paid plus the value of the vehicle at the time of its return. It is further provided that "the value of the vehicle shall be the amount of our appraisal or an appraisal from any bona fide cash buyer of lessee's choice; whichever is greater" and that "if the payments made plus the value of the vehicle is greater than the total lease price, the difference will be paid to the lessee in cash."

The lessee is given the right to terminate the lease at any time upon 30 days' notice with rental calculation to be made according to the terms of paragraph 2. The agreement also provides that upon any termination within six months from the lease date, the lessee would be entitled also to a credit of 60 per cent of the $1,530.52 referred to as the "rental mark-up."

Civil Code section 2981, subdivision (a)(2) defines a "Conditional Sale Contract" as including "Any contract for the bailment or leasing of a motor vehicle between a buyer and a seller, with or without accessories, by which the bailee or lessee agrees to pay as compensation a sum substantially equivalent to the value of the property, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming, the owner of the property upon full compliance with the terms of the contract . . ."

 It appears to us that the instant contract falls within the foregoing statutory definition. Appellant agreed to pay respondent "as compensation" a "total lease price" of $3,856.32 which was computed by adding to the cash value of the vehicle, fixed at $2,325.80, the "rental mark-up" of $1,530.52. Certainly appellant agreed to pay respondent a sum more than "substantially equivalent to the value of the 1965 Ford." Furthermore, this contract, in its practical and substantial effect, gives the "lessee" an option by which, upon payment of the prescribed rentals for the term of the contract, he becomes entitled either to the vehicle or to its appraised value in cash. Mr. Wright testified that "there have been times when the customer has been given the title to the car if they preferred that, rather than the check."

Respondent argues that because the contract is entitled "Automobile Leasing Contract" and the parties are therein referred to as "lessor" and "lessee," the conclusion necessarily follows that it is a lease and not a contract of sale within the coverage of the act. Respondent cites *People* v. *One 1955 Buick 2-Door Coupe,* 187 Cal.App.2d 684, 688 [10 Cal.Rptr. 79], which relied in part upon such terminology. But that decision does not hold such nomenclature to be conclusive. Law and equity require that we

look to substance rather than form in ascertaining the nature and legal effect of this agreement. Therefore, we have examined the substantive rights and liabilities created by the so-called "Automobile Leasing Contract" in order to determine whether or not it is a "Conditional Sale Contract" within the meaning of Civil Code section 2981, subdivision (a)(2).

We conclude that the decision in *People* v. *One 1955 Buick 2-Door Coupe, supra,* is not controlling because the distinctions there drawn between leases and conditional sales contracts concerned the application of the forfeiture provisions of Health and Safety Code sections 11610 and 11611. As the court pointed out in that case: "It is apparent from the face of the statute that the Legislature did not intend the definition as contained in section 2981 to govern in the Health and Safety Code." (P. 691.)

Respondent argues that since the lessee could terminate the lease at any time, it follows that she could relieve herself of the obligation to pay a price "equivalent to the value of the property." This argument does not withstand analysis.

Although the return of the automobile would relieve the lessee of liability for further monthly payments, such a termination would create an immediate obligation on the part of the lessee to make a payment computed as provided in paragraph 2. Thus, upon such a termination by the lessee, an obligation would be incurred to pay the entire rental mark-up of $1,530.52, or 60 percent of the rental mark-up if the termination occurred within the first six months, plus any depreciation that the car had suffered during the lessee's possession which is computed by determining the difference between $2,325.80, the agreed value of the vehicle at the time of its delivery, and the amount that a bona fide cash buyer would pay at the time of its return. The sum of these figures reduced only by the amount of the payments already made would be the obligation incurred by reason of the early termination.

Applying the lease provisions to the facts of this case as they actually developed, we find that upon repossession of the car, appellant's liability for rental mark-up was $1,530.52, and her liability for depreciation and refurbishing was fixed by respondent at $955.32. These sums amount to a total charge of $2,485.84 for the nine months that appellant possessed the car. The amount of this obligation clearly exceeded the value of the vehicle. Subtracting from this the $635.07 that appellant had paid respondent while she had the car, respondent arrived at the claimed deficiency of $1,850.77. We conclude as a matter of law that the lease contract requires the lessee "to pay as compensation a sum substantially equivalent to the value of the property" whether or not the lease runs its full term.

Under the provisions of this lease, the lessee is charged in any event with liability for any excess depreciation, that is, for any loss in value in excess of the amount calculated into the monthly lease payments. This liability is one of the indicia of ownership that is particularly important in the case of automobiles since they constitute a class of property with respect to which the depreciation rate is high, especially in the first year or two of ownership. Under the provisions of the present contract appellant was responsible for all depreciation whether she made all the payments or whether she elected to terminate the lease. Upon termination of the lease, paragraph 2 provides for a calculation of rent based upon the value of the automobile *at that time*. Thus, the lessee is charged with liability for depreciation in excess of that figured in the rental payments, the very aspect of ownership that the Legislature used in section 2981, subdivision (a)(2) to distinguish a lease from a conditional sale contract.

Respondent claims that to find the instant lease to be a "conditional sale contract" would be tantamount to holding all automobile leasing contracts to be "conditional sale contracts." We disagree.

Where a lease provides for total payments amounting to substantially less than the value of the automobile, or where the lessee is not subject to a detriment or liability for unforeseen depreciation, then there is a true lease and the act does not apply. In a lease not covered by section 2981, subdivision (a)(2), the total cost of depreciation charged to the lessee is included in the payments at a pre-set amount. Any unforeseen change in value is, thus, the liability of the lessor.

On the other hand, where the depreciation cost is entirely or partially determined by a provision that operates by using the value of the automobile *at the time of lease termination,* then the lessee possesses one more aspect of that bundle of rights known as ownership. Thus, if the lessee is to become the owner of the automobile, or, as in the instant case, will be compensated in an amount equal to the value of the automobile at the time of lease termination, then the requisite condition of section 2981, subdivision (a)(2) with respect to the lessee's "option of becoming, the owner of the property upon full compliance with the terms of the contract" is substantially fulfilled.

Respondent's "lease" was ingeniously written with an option to terminate, and a statement that the lessee was not to obtain any interest in the automobile. The obvious purpose was to avoid the application of the Automobile Sales Finance Act. Viewed realistically, however, it is apparent that the option to terminate was illusory in view of its prohibitive cost, and the statement that the lessee is not to have any interest in the automo-

bile is contradicted by the fact that the lessee is credited with the value of the automobile at the termination of the lease and is charged with depreciation, a charge normally associated with ownership.

This cleverly worded document, drafted to escape the protection provided by the Automobile Sales Finance Act, enabled respondents to engage in the very evils sought to be remedied by the act. Hidden within this lease there lurked, in addition to the monthly payments, an obligation for this unwary buyer in the amount of $1,850.77 for the nine months that she possessed the car. Such excessive charges would not have been possible had the terms of the agreement been in compliance with the requirements of section 2982, subdivisions (c) and (d) relating to the maximum amount of finance charges allowable and the required refund of unearned finance charges upon prepayment for a "Conditional Sale Contract."

The trial judge, in his summation of the case, made his position very clear regarding the inequity of the lease terms. He said that if he were charged such grossly excessive amounts for the use of a car, he would feel "pretty badly treated." He added that he did not understand why such contracts escaped the coverage of the act. We agree with the trial judge that these excessive charges and the pending foreclosure of the lien on appellant's home to collect them are the very evils that the Legislature intended to prohibit.

The judgment is reversed.

Fleming, J., and Compton, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied February 3, 1972.