[Civ. No. 60293. Second Dist., Div. Four. July 1, 1981.]

BUDGET RENT-A-CAR OF SOUTHERN CALIFORNIA, Plaintiff and Appellant, v.
SAMUEL ROY BERGMAN, Defendant and Appellant.

SAMUEL ROY BERGMAN, Plaintiff and Appellant, v.
BUDGET RENT-A-CAR OF SOUTHERN CALIFORNIA, Defendant and Appellant.

COUNSEL

Leon E. Kent for Plaintiff and Appellant and Defendant and Appellant.

Richard A. Perkins for Defendant and Appellant and Plaintiff and Appellant.

OPINION

McCLOSKY, J.—Budget Rent-A-Car of Southern California (Budget) appeals from a single judgment against it in two consolidated cases. Samuel R. Bergman (Bergman) cross-appeals from the said judgment and from the trial court's order taxing costs thereon, but only insofar as he was denied attorney fees "incurred in defense of contract related claims."

On September 20, 1974, Budget leased its used 1971 Rolls Royce automobile at a total monthly rental payment of $658.38 to Michael Urman/Old Time Cars (Urman) under a written open ended 36-month lease. Budget delivered possession of the Rolls to Urman. Though frequently late in doing so, Urman made the periodic monthly payments due under the lease through December 1974, when he defaulted on his payments. At all pertinent times, Urman was a dealer in old time used cars with a showroom wherein he displayed used (usually old time) cars for sale.

Urman displayed the leased Rolls on his showroom floor for approximately two weeks prior to, and including February 5, 1975. On that date, Urman sold it to Bergman, who had seen it there on display, for $25,987, including sales tax, for money and money's worth. The "money's worth" consisted of used cars traded into Urman by Bergman.

A couple of months later, Bergman called Urman and told him that the certificate of title still had not been received from the Department of Motor Vehicles. Urman thereupon told him that he was "flooring" the car with Budget and that he would pay Budget off and clear the matter up. Neither Bergman nor Budget contacted the other before June 1975. At that time Bergman's attorney Janger, spoke with Budget's then agent Vallely, who told him that Budget had leased the car to Urman. Janger inquired as to how much it would take for Bergman to pay the car off on the lease and to clear title and was informed that it was "a matter of some $23,400."

Janger attempted to get Urman to provide the funds to pay Budget off and clear the way for Bergman to get the promised record title to the car, but was unable to do so.

Janger prepared a form of assignment "Assignment of Lease Agreement and Option to Purchase," assigning all of Urman's right, title and interest under the Budget-Urman lease agreement to Bergman. Urman signed it. Janger then obtained from Budget an acknowledgment of assignment, including an agreement to release title to Bergman as equitable owner, and Bank of America as legal owner of said vehicle, upon the payment to Budget of the contract balance of $23,408.39. Budget unsuccessfully attempted to repossess the car from the possession of Bergman.

Budget sued Bergman and others (L.A.S.C. No. C153169) to recover possession of the automobile and for damages. Before being served with the summons and complaint in that action, Bergman sued Budget and others for fraud, to quiet title in to the car in himself and for injunctive relief and negligence (L.A.S.C. No. C153792). On stipulation of the parties, the two cases were consolidated for all purposes by order of the court below.

During the pendency of the consolidated cases, Budget obtained a writ of possession for the car. In consideration of Budget's forbearance to execute on that writ (among other things), Budget and Bergman en-

tered into a written agreement dated April 27, 1976. While that agreement provided that Bergman agreed to abide by the terms of the Budget-Urman lease agreement, it also provided that Bergman retain possession of the Rolls, and that upon Bergman paying Budget 17 monthly payments of $658.38, plus the sum of $9,360 by October 5, 1977, Budget would transfer clear title to Bergman. It further provided that the promises of Budget and Bergman therein were "made without prejudice to their right to claims, defenses, or damages" in the pending lawsuits, "including Bergman's right to claim all sums paid [ . . . under said agreement] as damages in the aforesaid actions and without prejudice to all Budget's rights, claims, defense, or damages of those which would inure to Budget" absent the said agreement and the covenants contained therein. Pursuant to said agreement Bergman made all of the payments called for therein in the total sum of $23,843, kept possession of the vehicle and received title to it.

In addition to not disturbing the possession and title in Bergman, the trial judge gave a single judgment in favor of Bergman and against Budget in the sum of $23,843 together with interest thereon in the sum of $4,113, plus costs.

### Contentions

Budget's contentions are as follows: "I. The decision below fails to follow California law in refusing to recognize that Section 2403, subdivision (3) of the California Uniform Commercial Code limits its application to an entrusting to a dealer 'for purposes of sale.' (A) The California version differs from the official text; (B) The findings with respect to the purpose of delivery to Urman were not sufficiently specific or adequate; (C) Findings 6 and 7 are without any support in the record. II. Bergman cannot qualify as a buyer in the ordinary course of business as defined by section 1201, subdivision (9). II. Bergman is at least estopped from contesting the superior title of Budget."

Bergman's contentions are as follows: "I. The findings and judgment in Bergman's favor are supported by substantial evidence. (A) Substantial Evidence supports the finding that Budget entrusted the vehicle to Urman, a dealer in goods of that kind, so as to empower him to convey good title to a buyer in the ordinary course of business. (1) At common law, an owner who delivers personal property to a dealer in goods of that kind may be estopped to deny the dealer's authority to sell the goods to a bona fide purchaser; (2) Under Commercial Code section

2403, subdivision (2), entrustment of personal property to a dealer in such goods empowers him to convey good title to a buyer in the ordinary course of business; (3) The lease of the automobile from Budget to Urman constituted an entrustment to a dealer in goods of that kind; (4) Commercial Code section 2403, subdivision (3) does not limit the coverage of section 2403, subdivision (2); (5) Even if the coverage of Commercial Code section 2403, subdivision (2) is believed to be limited by section 2403, subdivision (3), the transaction between Budget and Urman was a sale or like a sale within the meaning of section 2403 subdivision (3) and hence covered by section 2403, subdivision (2); (6) And even if it is believed that the transaction between Budget and Urman was not an entrustment within the meaning of the Commercial Code, Bergman's acquisition of title is protected by the pre-code estoppel doctrine, which remains in force. (B) Substantial evidence supports the finding that Bergman was a buyer in the ordinary course of business. (C) Substantial evidence supports the finding against the estoppel claimed by Budget. II. The trial court erred in failing to award Bergman attorney fees under the reciprocal provisions of Civil Code section 1717."

## I

We deal first with Budget's primary contention that "1. The decision below fails to follow California law in refusing to recognize that § 2403, (3) of the California Uniform Commercial Code [hereinafter Cal. U. Com. Code] limits its application to an entrusting to a dealer 'for purposes of sale.'" The version of the Uniform Commercial Code [hereinafter U. C. C.] adopted in this state differs from the Official Text. Bergman contends to the contrary that section 2403 of the Commercial Code, subdivision (3) does not limit the coverage of section 2403, subdivision (2), but enlarges that coverage; and that even if this court erroneously believes that it does, that "the transaction between Budget and Urman was a sale or like a sale within the meaning of section 2403, subdivision (3) and hence covered by section 2403, subdivision (2)"; and that the lease of the automobile from Budget to Michael Urman/Old Time Cars under the open-ended lease for a term of 36 months "was an entrustment (Findings 4, 5 and 6) of said vehicle to a merchant who dealt in goods of that kind, within the meaning of section 2403 of the Commercial Code of the State of California."

California enacted U. C. C. section 2403, subdivision (2) exactly as it appeared in the U. C. C. Official Text. That section provides that:

"Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business."

In enacting subdivision (3) of section 2403 of the U. C. C., however, the Legislature modified the Official Text of the U. C. C. by adding the words "for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like," after the words "retention of possession," so that the Cal. U. Com. Code section 2403, subdivision (3) reads as follows: "'Entrusting' includes any delivery and any acquiescence in retention of possession for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like; regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

A report of the California State Bar Committee gives the following explanation of the inclusion of additional language in subdivision (3) of this section: "The Official Text of section 12403 [2403] would go further than it needs to. It would also permit the passage of valid title in the ordinary course of business by a merchant entrusted with goods for some purpose other than sale: for example, if one left his watch for repair and the jeweler displayed it in his showcase and sold it, the owner could not replevy it from the purchaser. The State Bar Committee has recommended that section 12403 [2403] be limited to the cases in which the owner entrust goods to a merchant for the purpose of sale or finding a buyer." California State Bar Committee on the Commercial Code, *A Special Report, the Uniform Commercial Code* (1962) 37 State Bar J. page 148. (Cal. Code Comment by John A. Bohn and Charles J. Williams, West's Ann. Cal. Codes, Com. Code section on 2403, at p. 384.) The Legislature enacted subdivision (3) in its modified form after "Professors Marsh and Warren [whose services had been engaged by the Senate Fact Finding Committee] recommended that subsection 2-403, subdivision (3) of the Official Text [of the U. C. C.] be enacted without modification."

Respondent Bergman urges that the word "includes" in subdivision (3) of section 2403 is not a word of limitation but a word of enlargement, citing *People* v. *Horner* (1970) 9 Cal.App.3d 23, 27 [87 Cal. Rptr. 917] for authority that "[ . . . ] the words 'include' and 'including' are *ordinarily* words of enlargement, and not of limitation [citations

omitted, italics added].″ (See also 58 Cal.Jur.3d 532, Statutes Interpretation, Particular Words, § 138 "Includes"; "Including" to the same effect.)

█ In *Moyer* v. *Workmen's Compensation Appeals Bd.* (1973) 10 Cal.3d 222, 230-231 [110 Cal.Rptr. 144, 514 P.2d 1224] our Supreme Court has aptly summarized the general principles of construction of a statute as follows: "We begin with the fundamental rule that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations omitted.] In determining such intent '[t]he court turns first to the words themselves for the answer.' [Citations omitted.] We are required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.' [Citations omitted.] 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation omitted.] '[A] construction making some words surplusage is to be avoided.' [Citations omitted.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations omitted.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (See also *Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749].)

█ There is no reason to conclude that in enacting section 2403, subdivision (3) in language different from that used in the U. C. C., the Legislature was intending to enlarge, rather than limit, the powers of a merchant who deals in goods of that kind to transfer all rights of the entruster to a buyer in ordinary course of business, for there was no need for it to do so.

By looking into its California legislative history, by harmonizing the particular subdivision as enacted in our state, with the rest of this section, and by giving significance to all of its words, phrases, sentences and parts, in the context of the statutory framework as a whole, we conclude that the language in question added by the California Legislature was intended to be, and is, limiting language. We, therefore, conclude that to constitute an "entrusting," so as to give Urman the power to transfer the rights of Budget to Bergman, there would have had to have been a delivery, or an acquiescence in retention of possession for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like.

## II

Here, by the terms of the Budget-Urman open-ended lease agreement,[1] the delivery by Budget to Urman and Budget's acquiescence, for a period of time in Urman's retention of possession of the vehicle, was not for the purpose of sale [by Urman] or for the purpose of obtaining offers to purchase, locating a buyer, or the like.

While it is true that the Budget-Urman agreement contemplated an eventual sale, that sale was to be by Budget, not Urman, and was not to take place until after the entrustment to Urman was terminated and the vehicle had been returned to Budget. Therefore, it would not be within either the period or the purpose of the "entrustment." Bergman, nevertheless contends that the Budget-Urman agreement was actually a "sale" or "like a sale," stating "there is specific California authority for the proposition that an 'open-ended' automobile lease of this kind is actually a conditional sale; *Thomas* v. *Wright* (1971) 21 Cal.App.3d 921 [98 Cal.Rptr. 874]."[2] That case, however, is distinguishable from the

[1]Paragraph 9 of said lease agreement, insofar as pertinent, provides as follows: "TERMINATION: Upon the expiration of the herein stated Term of this Lease and upon the return of Vehicle to Lessor, Lessor shall sell the Vehicle, which sale may be made at the then wholesale price and Lessor shall have no obligation whatsoever to sell or attempt to sell the Vehicle at retail. The rights of Lessor and of Lessee upon termination and sale of Vehicle are as follows: FOR OPEN-END LEASE—If the NET amount received from sale of Vehicle exceeds the maximum liability herein listed Lessor shall pay such excess to Lessee as reduction in rental. If the net amount received from such sale is less than the maximum liability, the total amount of such deficiency shall be paid by Lessee to Lessor promptly after demand thereof. The 'NET amount' as herein used shall be defined as the sales price of the Vehicle less ____ percent which percentage is to cover Lessor's costs incurred in connection with the sale. Nothing contained in this Lease shall be deemed to give Lessee any rights in the Vehicle, except as a Lessee, or to give Lessee at any time any option or other right to purchase or acquire Vehicle except at [sic] the best of three bidders. Lessee upon Lessor's permission may terminate this lease after the first 12 months provided Lessee is not in default with respect to any of the terms, conditions and covenants herein and after thirty (30) days written notice to Lessor. Such termination shall not relieve Lessee of any obligation herein except and until Lessee surrenders the Vehicle to Lessor and pays Lessor any rental accrued to date of surrender PLUS the difference between the net amount of sale and the Original Value less the total accrued monthly credits calculated to the date of surrender."

[2]*Thomas* v. *Wright, supra*, 21 Cal.App.3d 921, dealing with an "open ended" lease with some provisions somewhat similar to those in the "Lease Agreement" in the case at bench, held that the "open ended" lease therein was in fact a conditional sale within the purview of the Automobile Sales Finance Act (Rees-Levering Act, Civ. Code § 2981, subd. (a)(2) as it then existed) so as to invalidate and render unenforceable a deed of trust on the buyer's home, given as security for the performance of the contact, as being in violation of the provision of the Automobile Sales Finance Act. That provi-

case at bench, both by the terms of the respective agreements involved and by the fact that the Automobile Sales Finance Act provisions (Civ. Code, § 2981, subd. (a)(2)) was changed after that case and Civil Code section 2981.5 was added to that act.

As we have seen, under the terms of the Budget-Urman agreement, Urman had no express option to buy the Rolls except as the best of three bidders at a sale to take place after the entrustment was over at the termination or expiration of the lease, and after Urman had returned the vehicle to Budget. At such time, the terms of the Budget-Urman lease agreement required Budget to sell the Rolls. If it was sold to a purchaser who bid higher than Urman, then if the net amount received from such sale of the vehicle by Budget exceeded the maximum liability of Urman at the end of the 36 month lease term, (which was fixed at $13,000, at the end of 36 months) then Budget would have to pay such excess to Urman as reduction in rental. However, in the event the net amount Budget received from the sale of the vehicle to a higher bidder was less than Urman's then maximum liability, that agreement required Urman to make up any deficiency, up to a maximum liability of $13,000, if he were not then otherwise in default. Thus, his maximum liability was to be established by the value of the Rolls as determined by its sales price at the end of the lease, which takes it out of the application of the Automobile Sales Finance Act by the provisions of Civil Code section 2981.5.

Neither the required liberal construction of the Commercial Code to effectuate its purpose and policies (Cal. U. Com. Code, § 1102, subd. (1)), nor a desire to simplify, clarify or modernize the law governing commercial transactions, nor an effort to make uniform the law among the various jurisdictions (Cal. U. Com. Code, § 1102, subd. (2)(a) and

---

sion prohibits the seller from taking, as security, title to, or a lien of, any property other than the motor vehicle which is the subject of the contract. (Automobile Sales Finance Act, Civ. Code, § 2981 et seq.)

After the holding in *Thomas* v. *Wright*, section 2981, subdivision (a)(2) was amended and Civil Code section 2981.5 was added to that act so as to exclude certain kinds of "open-ended" automobile leases from the coverage of that act.

Said section 2981.5 enacted in 1973, and in force at all times pertinent hereto, provides as follows: "A contract for the bailment or leasing of a motor vehicle, with or without accessories, which establishes the maximum for which a bailee or lessee could be held liable at the end of the lease or bailment period, or upon an earlier termination, by reference to the value of the vehicle at such time, is not a contract by which the bailee or lessee will become or for no other or for a nominal consideration has the option of becoming the owner of the vehicle, for the purposes of paragraph (2) of subdivision (a) of Section 2981 or any other provision of this chapter."

(c)), permit us to ignore the obvious limiting intent of the California Legislature in adding the words "for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like" to Cal. U. Com. Code section 2403, subdivision (3).

### III

Bergman contends that while the Cal. U. Com. Code was in force when this case arose, it was enacted against a common law background which makes the precode principles still available to supplement the code if needed. He further contends that "Even if it is believed that the transaction between Budget and Urman was not an entrustment within the meaning of the Commercial Code, Bergman's acquisition of title is protected by the pre-code estoppel doctrine which remains in force. Commercial Code section 1103, in pertinent part provides: 'Unless displaced by the particular provisions of this code, the principles of law and equity, including . . . the law relative to . . . estoppel . . . or other validating . . . cause shall supplement its provisions.'"

In the California law extant before the enactment of the Cal. U. Com. Code, one entrusted with the possession of goods had power to transfer the title only if some indicia of ownership other than mere possession was present. (*Bice* v. *Harold L. Arnold, Incorporated* (1925) 75 Cal.App. 629, 638 [243 P.2d 468]. See also former Civ. Code, § 1743 and *Metropolitan Finance Corp.* v. *Morf* (1941) 42 Cal.App.2d 756 [109 P.2d 969].) "Entrusting a third person with mere possession does not constitute holding him out as owner." The problem under former Civil Code section 1743 was that the cases usually turned on the question of estoppel or obstensible ownership. Section 2403, subdivisions (2) and (3) provide express standards whereby one who entrusts his goods with a merchant can know whether or not he has conferred power upon that merchant to transfer title to the entrusted goods. The seller has power to transfer title when the true owner makes "any delivery" or acquiesces "in retention of possession for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like." (See Cal. Code Comment 7, to West's Ann. Cal. U. Com. Code, § 2403 at pp. 383-384.)

We, therefore, conclude that Cal. U. Com. Code section 2403, subdivisions (2) and (3) must be read together; and that the words "for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like" are words of limitation which describe the exclusive purposes of the delivery or acquiescence in retention of possession, which give a

merchant in possession, who deals in goods of that kind, the power to transfer the ownership rights of those goods to a buyer in the ordinary course of business.

## IV

We have examined the record and find no substantial evidence therein that the delivery by Budget to Urman or Budget's acquiescence in Urman's retention of possession of the Rolls, was "for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like." Nor does the record reflect substantial, or any evidence that Urman either attempted to sell this car or displayed it in his showroom floor until approximately three months or more after Urman had obtained its possession from Budget.

As our determination of the foregoing issues requires a reversal, it is not necessary for us to reach or decide the other issues raised by the appeal and cross-appeal and we do not do so.

The single judgment of the trial court in these consolidated cases is reversed. Each party is to bear its own costs on appeal.

Files, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied July 20, 1981, and the petition of appellant Bergman for a hearing by the Supreme Court was denied September 10, 1981.