GENERAL SECURITY INSURANCE COMPANY Plaintiff—Appellant,

v.

RELIANCE INSURANCE COMPANY Defendant—Appellee.

General Security Insurance Company Plaintiff—Appellee,

v.

Reliance Insurance Co.; Continental Insurance Company Defendants— Appellants.

Nos. 00–55366, 00–55484.*
D.C. No. CV–99–02322–HLH.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 18, 2001.

Decided April 2, 2002.

---

appealability is denied as untimely. Circuit Rule 22–1(d).

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. AWC's motion to strike is denied.

* The panel finds case 00–55484 appropriate for submission without oral argument pursuant to Fed. R.App. P. 34(a)(2).

Before B. FLETCHER, D. NELSON, and McKEOWN, Circuit Judges.

MEMORANDUM **

General Security Insurance Company ("General Security"), an excess insurance provider, sued both Reliance Insurance Company ("Reliance") and Continental In-

** This disposition is not appropriate for publication and may not be cited to or by the

surance Company ("Continental") for contribution after General Security paid nearly $2 million to the victim of a tractor-trailer crash. The victim, an employee of Sequoyah Trucking ("Sequoyah"), drove a rig that included a trailer Sequoyah rented from J.T. McKinney Co. ("McKinney"). General Security filed separate suits claiming that both Reliance and Continental insured the trailer portion of the rig. On cross motions for summary judgment in both cases, the district court determined that Reliance owed contribution while Continental did not. Both Reliance and General Security appeal the summary judgments entered against them. We affirm.

Because the parties are familiar with the facts, we restate them only as necessary to explain our decision.

## I. *General Security v. Reliance*

■ Reliance insured McKinney under a commercial general liability policy with a $1,000,000 personal injury coverage limit. The policy covered "leasing of tractor trailers for overnight road use and dry storage."

Reliance's standard policy included several exclusions barring liability for bodily injury and property damage. Specifically, policy section 2(g) excluded recovery for "bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured."

However, Section 2(g) also included five categories of losses *not* subject to the general prohibition on auto, aircraft, and watercraft liability. To those standard five (none relevant here), Reliance and McKinney added a sixth via Endorsement 15:

courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

under added section 2(g)(6), the automobile, aircraft, and watercraft exclusion *did not* apply to "leasing trailers to others for overnight road use and dry storage." Thus the Reliance policy expressly insured McKinney against liability for bodily injury and property damage arising from its trailer leasing business.

California insurance law mandates that all automobile policies extend coverage to permissive users of covered automobiles. Cal.Ins.Code § 11580.1. As lessees, Sequoyah and its driver were permissive users of the McKinney trailer. Reliance contends that California's permissive user mandate does not apply to its comprehensive general liability policy. Furthermore, Reliance contends that, even if the mandate could apply, a trailer is not an auto or motor vehicle within the meaning of the statute.

The district court concluded that Cal. Ins.Code § 11580.1 mandated coverage for permissive users of McKinney's trailers under the terms of the Reliance Policy. Because Reliance expressly extended bodily injury and property damage coverage to the trailers via Endorsement 15, the court reasoned that the statute—which typically reaches only automobile insurance policies and does not affect comprehensive general liability policies like the one at hand—required that any coverage extended to McKinney for the use of the trailers must also extend to Sequoyah and its driver as permissive users.

Our reading of the California statutes confirms this conclusion. California Insurance Code § 11580.05 confirms that, with the exception of a few categories of policies to which the Reliance policy does not belong, "any other policy issued or delivered in this state affording liability insurance with respect to ownership, maintenance, or use of a *motor vehicle* shall comply with the requirements set forth in Sections 11580, 11580.1, and 11580.2." (emphasis added)

Cal.Ins.Code § 11580.06 clarifies that a "motor vehicle" means "any vehicle designed for use *principally upon streets and highways* and *subject to motor vehicle registration* under the laws of this state." (emphasis added)

California Vehicle Code § 630 confirms that a trailer is a vehicle, defined by Cal. Veh.Code § 670 as "a device by which any person or property may be propelled, moved, or *drawn upon a highway.*" (emphasis added) This definition is consistent with the first prong of the "motor vehicle" definition in § 11580.06. Furthermore, Cal. Veh.Code § 4000 subjects trailers to motor vehicle registration, signaling that trailers also satisfy § 11580.06's second prong.

Therefore, a trailer is a "motor vehicle" as contemplated by § 11580.05. Under the terms of that statute, because the Reliance policy extended liability coverage to McKinney's trailers, the policy must also comply with § 11580.1, which mandates that coverage be extended to permissive users. If a policy does not contain the mandated provision, the permissive user coverage is nonetheless part of the policy as a matter of law. *Wildman v. Government Employees' Ins. Co.*, 48 Cal.2d 31, 39, 307 P.2d 359 (1957) (holding that an insurer could not write permissive user coverage out of an insurance policy; if a policy did not contain an express permissive user coverage provision, one would be read into the policy by function of law).

As Reliance points out, it is true that the California Legislature acted to clarify in what is now § 11580.1(e) that general liability policies that exclude automobile coverage should not be transformed into automobile insurance policies subject to § 11580.1's requirements simply because they cover losses incidentally involving automobiles. To the contrary, as explained

in § 11580.5, only policies that extend liability insurance to the "ownership, maintenance, or use of a motor vehicle" must comply with § 11580.1. However, because Reliance expressly extended coverage to McKinney's trailers by including Endorsement 15 and removing the trailers from the automobile exclusion, Reliance agreed to insure claims arising from the "ownership, maintenance, or use" of the trailers and must provide coverage to permissive users pursuant to § 11580.1. Reliance's coverage of the trailers was more than incidental, thus § 11580.1(e) affords Reliance no protection. We conclude that Reliance insured McKinney's trailers. Thus, it must cover Sequoyah and its driver as permissive users of McKinney's trailer. Therefore, we affirm the district court's grant of summary judgment in favor of General Security.

## II. *General Security v. Continental*

■ Continental provided McKinney with a commercial auto policy. According to the declarations page, the Continental policy extended $1,000,000 in liability coverage to three categories of covered autos: (1) autos specifically described in the policy declarations; (2) leased, hired, rented, and borrowed autos; and (3) non-owned autos used in connection with McKinney's business. The policy defines "auto" as "a land motor vehicle, trailer or semi-trailer designed for travel on public roads but does not include 'mobile equipment.' "

McKinney obtained the trailer involved in the accident underlying these proceedings as well as 59 others obtained through an agreement with Cargill Leasing Corporation ("Cargill"). General Security argues that the trailer was leased, and therefore covered by the Continental policy. However, the district court determined that the McKinney–Cargill agreement was not a lease, but a disguised or conditional sale, leaving the trailer beyond the protection of Continental's coverage. The district court further concluded that McKinney obtained its policy with Reliance specifically to cover all of its trailers and the operations of its trailer rental business—coverage Continental's policy did not furnish. Reviewing the grant of summary judgment in Continental's favor de novo, *John Deere Insurance Co. v. Nueva,* 229 F.3d 853, 855 (9th Cir.2000), we agree.

General Security focuses on the formal language of the agreement. Specifically, General Security places considerable stock in the fact that the first word of the agreement is *LEASE* and that the terms "lease," "lessor," and "lessee" are used throughout the agreement.

Continental argues that Cargill provided financing for the trailers, which both parties intended would remain the property of McKinney for the duration of their expected five-year lifetimes. The following aspects of the McKinney–Cargill agreement support Continental's contention that the two companies contracted for a conditional sale[1] of the trailers rather than a true lease, and that McKinney's obligations under the contract evidence that it was the trailers' true owner and not merely their lessee:

1. **Payments.** According to the terms of Schedule A to the agreement, McKinney would tender Cargill a lump payment of $143,910 plus any applicable sales taxes, followed by monthly payments of $14,870.03 for the depreciable life of the trailers.

---

1. *Black's Law Dictionary* defines a conditional sales contract as a "[f]orm of sales contract in which seller reserves title until buyer pays for goods, at which time, the condition having been fulfilled, title passes to buyer." BLACK'S LAW DICTIONARY 267 (5th Ed.1979).

Over the course of the agreement, McKinney would therefore pay Cargill $1,036,111.80. The 60 trailers cost Cargill $959,400 new. Thus, Cargill would realize an unadjusted return of roughly 8 percent over five years.

2. **Legal Obligations.** McKinney bore responsibility for all assessments, license fees, taxes, and other governmental charges, fees, fines or penalties. Motor vehicle registration documents listed McKinney as the trailer's registered owner and Cargill as the legal owner.

3. **Maintenance.** Cargill bore no responsibility for any repairs or maintenance to the trailers.

4. **Termination.** Paragraph 18 of the agreement—entitled "Return of Equipment"—specifies that McKinney will return the trailers to Cargill "as described in Schedule(s) A." Schedule A reveals (despite General Security's contention to the contrary) that McKinney is not to return the trailers at all, but is to pay Cargill 18 percent of their original cost, thus guaranteeing Cargill a specific lump payment of $172,692.

When attempting to characterize agreements as conditional sales or leases, California courts have consistently stressed the importance of looking through form to substance. *See Ulwelling v. Crown Coach Corporation*, 206 Cal.App.2d 96, 23 Cal. Rptr. 631 (1962).

General Security counters that, unlike the "Lease of School Bus with Option to Purchase" in *Ulwelling*, the McKinney–Cargill agreement called itself a "True Lease" under which McKinney had no option to buy at the end of the lease term. These claims—to the extent that they are true—are not persuasive. Selection of a name alone cannot transform a document's character. Furthermore, General Security's interpretation of McKinney's options at the end of the lease is inconsistent with the document's terms. Specifically, paragraph 18 of the agreement indicates that the trailers could be "returned" to Cargill as specified in Schedule A. Schedule A, however, offered no option to return the trailers, but instead specified that McKinney must sell the trailers (thus transferring legal title) to a bona fide purchaser—which could be McKinney. McKinney also promised to pay Cargill a predetermined sum, thus guaranteeing Cargill a set rate of return and ensuring that McKinney would bear the risk of unanticipated depreciation—a key indicia of ownership. *Thomas v. Wright*, 21 Cal.App.3d 921, 98 Cal.Rptr. 874 (1971). As California courts have noted, "a lease in which the bailee or lessee agrees to pay as compensation a sum substantially equivalent to the value of the property and is bound to become, or has the option of becoming the owner of the property, is a conditional sale." *Klein v. Leatherman*, 270 Cal.App.2d 792, 76 Cal. Rptr. 190 (1969).

The California Court of Appeal also found a purported lease to be a disguised sales agreement in a case with termination provisions virtually indistinguishable from the instant case. In *Cal–Farm Insurance Cos. v. Fireman's Fund American Insurance Cos.*, 25 Cal.App.3d 1063, 102 Cal. Rptr. 568 (1972), the "lease" agreement for various Cadillacs worked as follows: the parties agreed on a base sales price; at the end of the lease term, the lessee either took title or sold the vehicle to a wholesaler or dealer. If the combined total of the lease payments and the final sales price exceeded the pre-determined base price, the lessee kept the surplus; if it did not meet the base price, the lessee made up the difference. *Id.* at 1072–1073, 102 Cal. Rptr. 568. Either way—as in the McKinney–Cargill agreement—the so-called lessor earned a guaranteed return while bearing no depreciation risk. This court held, under California law, that a similar

agreement whereby the entire risk of depreciable loss shifted to the lessee was, by operation of law, a conditional sale and not a lease. *Swift Dodge v. Commissioner of Internal Revenue*, 692 F.2d 651 (9th Cir. 1982).

Because the terms of the McKinney–Cargill agreement bear all the marks of a conditional sale rather than a lease, we conclude that the contract was not a lease as a matter of law and thus the trailers were not covered as "hired" autos under McKinney's policy with Continental. Therefore we affirm summary judgment in Continental's favor.

AFFIRMED.