[No. B158548. Second Dist., Div. Six. July 1, 2003.]

MERCEDES-BENZ CREDIT CORPORATION, Plaintiff and Respondent, v. TERRY JOHNSON, Defendant and Appellant.

54

**COUNSEL**

James G. Lewis for Defendant and Appellant.

Cooksey, Toolen, Gage, Duffy & Woog, Kim P. Gage and Byron J. Bahr for Plaintiff and Respondent.

**OPINION**

**COFFEE, J.**—Terry Johnson appeals from a judgment entered in favor of respondent Mercedes-Benz Credit Corporation (MBCC) after a nonjury trial on stipulated facts and exhibits. Johnson purchased a Mercedes-Benz automobile from Big Max Cars, a used car dealership owned by Hassan Marzban. At the time he purchased the car, Johnson was unaware that, two weeks earlier, Marzban had leased the car for five years for his personal use from Calabasas Motor Cars/MBCC and failed to make any payments under the lease. During the litigation, the parties agreed to sell the automobile. Johnson and MBCC each assert superior title and entitlement to the proceeds of sale.

The trial court ruled that MBCC had superior title under California Commercial Code section 10305.[1] We agree with the trial court's interpretation of that statute and affirm the judgment.

### FACTS

Respondent MBCC, through its affiliate Calabasas Motor Cars, leased a new Mercedes-Benz automobile to Hassan Marzban with an option to purchase the vehicle at the end of the lease. In the lease, Marzban agreed to (1) pay $64,777.65 over the five-year term of the lease; (2) use the vehicle only for personal, family or household purposes; (3) ensure that the vehicle's title was registered in the name of MBCC; and (4) refrain from assigning or subleasing any interest in the vehicle. The lease also states that Marzban had no equity or other ownership right unless he purchased the vehicle at the end of the lease.

---

[1] All statutory references are to the California Commercial Code unless otherwise indicated.

Immediately after leasing the car, Marzban advertised it for sale at his used car dealership, Big Max Cars. Appellant Terry Johnson bought the vehicle from Big Max Cars for $66,000 in cash. After the sale to Johnson, Marzban failed to make payments under the lease and fled the country. The car was repossessed by MBCC.

MBCC filed a complaint against Marzban and Johnson for declaratory relief and breach of contract alleging that its interest in the vehicle is superior to any interest or claim by Marzban or Johnson. Johnson filed a cross-complaint for declaratory relief alleging superior title as a good faith purchaser.

MBCC's motion for summary judgment was denied and the matter proceeded to a nonjury trial on stipulated facts and exhibits. At trial, Johnson argued that under section 10305, subdivision (b), he is entitled to the vehicle free and clear of any interest of MBCC because he purchased it in the ordinary course of business from a licensed used car dealer. MBCC argued at trial that its interest is superior to Johnson's under section 10305, subdivision (a), and Johnson is not entitled to the protection of subdivision (b)..

Judgment was entered for MBCC. Johnson moved for a new trial on the ground of surprise. Johnson's attorney asserted that MBCC waited until the day of trial to dispute the legal relationship between Marzban and Big Max Cars. The trial judge denied the motion on the grounds that Johnson provided no evidence of surprise and there was insufficient evidence of entrustment under section 10305, subdivision (b).

## DISCUSSION

■ Where, as here, a case is tried on stipulated facts and documentary evidence, we make our own determination of the questions of law presented by the stipulated facts. (*Container Corp. of America v. Franchise Tax Bd.* (1981) 117 Cal.App.3d 988, 993 [173 Cal.Rptr. 121].)

Section 10305 provides: "(a) Subject to the provisions of Section 10303 [not applicable here], a buyer or sublessee from the lessee of goods under an existing lease contract obtains, to the extent of the interest transferred, the leasehold interest in the goods that the lessee had or had power to transfer, and, except as provided in subdivision (b) of this section and subdivision (d) of Section 10511 [not applicable here], takes subject to the existing lease contract. A lessee with a voidable leasehold interest has power to transfer a good leasehold interest to a good faith buyer for value or a good faith sublessee for value, but only to the extent set forth in the preceding sentence. When goods have been delivered under a transaction of lease the lessee has

that power even though: [¶] (1) The lessor was deceived as to the identity of the lessee; [¶] (2) The delivery was in exchange for a check which is later dishonored; or [¶] (3) The delivery was procured through fraud punishable as larcenous under the criminal law.

"(b) A buyer in the ordinary course of business or a sublessee in the ordinary course of business from a lessee who is a merchant dealing in goods of that kind to whom the goods were entrusted by the lessor obtains, to the extent of the interest transferred, all of the lessor's and lessee's rights to the goods, and takes free of the existing lease contract.

"(c) A buyer or sublessee from the lessee of goods that are subject to an existing lease contract and are covered by a certificate of title issued under a statute of this state or of another jurisdiction takes no greater rights than those provided both by this section and by the certificate of title statute."

Johnson argues that his interest in the automobile is superior to that of MBCC and he takes free of the existing lease contract under section 10305, subdivision (b), because he was a buyer in the ordinary course of business and Marzban was a merchant dealing in automobiles. ■ MBCC's argument that there is no need for the court to construe section 10305, subdivision (b), because it has superior title under section 10305, subdivision (a), ignores the fact that subdivision (b) is an express exception to subdivision (a). Therefore, MBCC's rights under subdivision (a) cannot be fully determined unless the subdivision (b) exception is held to be inapplicable.

In *Budget Rent-A-Car of Southern California v. Bergman* (1981) 121 Cal.App.3d 256 [175 Cal.Rptr. 286], the court applied section 2403,[2] the model for section 10305, to facts substantially similar to those here. In that

---

[2] Section 2403 provides: "(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though [¶] (a) The transferor was deceived as to the identity of the purchaser, or [¶] (b) The delivery was in exchange for a check which is later dishonored, or [¶] (c) It was agreed that the transaction was to be a 'cash sale,' or [¶] (d) The delivery was procured through fraud punishable as larcenous under the criminal law. [¶] (2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business. [¶] (3) 'Entrusting' includes any delivery and any acquiescence in retention of possession for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like; regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law. [¶] (4) The rights of other purchasers of goods and of lien creditors are governed by the divisions on secured transactions (Division 9), bulk transfers (Division 6) and documents of title (Division 7)."

case, Budget leased a used car to Urman/Old Time Cars. After making a few payments, Urman defaulted on the lease and sold the car through his dealership to Bergman. Budget and Bergman sued each other for possession of the car.

■ The appellate court construed the term "entrusting" in section 2403, subdivision (3). After an extensive discussion of the legislative history of that section, the court determined that the phrase added by the California Legislature to the end of the Uniform Commercial Code version of the section—"for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like"—were words of limitation, not expansion. (*Budget Rent-A-Car of Southern California v. Bergman, supra,* 121 Cal.App.3d at p. 264.)

"[T]o constitute an 'entrusting,' so as to give Urman the power to transfer the rights of Budget to Bergman, there would have had to have been a delivery, or an acquiescence in retention of possession for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like. [¶] Here, by the terms of the Budget-Urman open-ended lease agreement, the ·delivery by Budget to Urman and Budget's acquiescence, for a period of time in Urman's retention of possession of the vehicle, was not for the purpose of sale [by Urman] or for the purpose of obtaining offers to purchase, locating a buyer, or the like." (*Budget Rent-A-Car of Southern California v. Bergman, supra,* 121 Cal.App.3d at pp. 263-264, [fn. omitted]; see also *United States v. Ravel* (9th Cir. 1991) 930 F.2d 721, 725, fn. 2 ["California has amended section 2403, but that amendment·makes it *more difficult* for a buyer of stolen goods to establish title to the goods than under the standard version of section 2403"].)

■ Johnson argues that applying the definition of "entrusting" in section 2403, as construed in *Budget,* to personal property leases governed by section 10305 leads to absurdity because it requires the assumption of "a scenario that never occurs in a commercial world," i.e., in the real world, personal property is never leased "for the purpose of obtaining offers to purchase, locating a buyer, or the like." Johnson's argument is disingenuous. The fact situation that he asserts "never occurs" in the commercial world occurred here and is the reason for this lawsuit, although its occurrence is infrequent. And, as noted above, the same fact pattern gave rise to the litigation in *Budget.* Reported cases in other jurisdictions also show that· the type of fraud section 10305, subdivision (a)(3) was adopted to prevent is not uncommon. (See, e.g., *Alamo Rent-A-Car, Inc. v. Williamson Cadillac· Co.* (Fla.Dist. Ct.App. 1993) 613 So.2d 517; *Touch of Class Leasing v. Mercedes-Benz Credit of Canada, Inc.* (N.J.Super.Ct.App.Div. 1991) 248 N.J. Super. 426 [591 A.2d 661].)

■ Even if we accepted Johnson's argument that the California Legislature did not intend the statutory definition of "entrusting" in section 2403 to

carry over to section 10305, the result would be the same. The common, ordinary definition of "entrust" is: "To give over to another something after a relation of confidence has been established. To deliver to another something in trust or to commit something to another with a certain confidence regarding his care, use or disposal of it." (Black's Law Dict. (6th ed. 1990) p. 533, col. 1; see also *Alamo Rent-A-Car, Inc. v. Williamson Cadillac Co., supra,* 613 So.2d at p. 519 ["the vehicle could not have been 'entrusted'—a term which itself connotes knowledge and volition—in the admitted absence of any indication that Alamo was aware of [its lessee's] unlawful business or intent"].)

█ The record contains no evidence that MBCC gave Marzban possession of the automobile knowing that he would default on the lease, sell the car and abscond with the proceeds. The only evidence in the record of MBCC's intent is in the lease, to which Johnson stipulated. The lease contains clear language that the car was being leased to Marzban as an individual, for his personal use only; that title remained in MBCC; and that any assignment of an interest in the vehicle was prohibited.

The trial court did not abuse its discretion by denying Johnson's motion for a new trial based on surprise. The asserted surprise is that Johnson believed until trial that there was no question that Marzban was doing business as Big Max Cars. Johnson agreed to try the case on stipulated facts and documentary evidence and he is bound thereby. (*Mooney v. Pickett* (1972) 26 Cal.App.3d 431, 437 [102 Cal.Rptr. 708].) Nothing in the stipulations or the documents on which the case was tried contains a scintilla of evidence of the pivotal fact of a knowing transfer on the part of MBCC. All the evidence proves the contrary.

The judgment of the trial court is affirmed. Costs are awarded to respondent.

Gilbert, P. J., and Perren, J,. concurred.