[No. B192291. Second Dist., Div. Four. Sept. 11, 2007.]

HENRI BACCOUCHE, Plaintiff and Appellant, v.
JOHN M. BLANKENSHIP, Defendant and Respondent.

**COUNSEL**

David Romley for Plaintiff and Appellant.

Edward D. Russell and Michael J. Gilligan for Defendant and Respondent.

**OPINION**

**EPSTEIN, P. J.**—We deal with the enforceability of an easement for equine use. Appellant Henri Baccouche, who now owns the servient tenement, argues that the easement granted by his predecessor violates a municipal ordinance that restricts the keeping of horses on residential property, because his lot is vacant land. Respondent John M. Blankenship, who owns the dominant tenement, argues the equine use is accessory to use of his residential property, hence that it is valid. We agree that Blankenship has a

valid easement. But applicable zoning ordinances prohibit the keeping of horses on a lot not developed for residential use. For that reason, the easement is unenforceable insofar as it would allow a use in violation of those ordinances.

## FACTUAL AND PROCEDURAL SUMMARY

We take our factual summary from the stipulated facts at trial. Blankenship owns a 22,000-square-foot lot in the Sunland area of the City of Los Angeles (City). His neighbor, Baccouche, owns a 170,319.6-square-foot lot, which is contiguous to the Blankenship lot. Both lots are zoned RE40-1 (residential estate) by the City. Blankenship's predecessors in interest included Eugene Elson. Baccouche's predecessors included Rolf and Monika Monholf.

In January 1994, the Monholfs executed a grant of easement as to three-quarters of an acre of the northeast corner of the property now owned by Baccouche. The easement was granted to Elson for the keeping and enjoyment of horses on the easement area. The easement is appurtenant to the Blankenship property, so that both it and the horses there may run with the land. For this easement, the Blankenship property is the dominant tenement and the Baccouche property the servient tenement. The recorded grant is of an exclusive easement to the Blankenship property for the keeping and enjoyment of horses, including any lawful activity associated with keeping horses, such as boarding, feeding, raising, training, riding, or building, storing, or maintaining fences, feed, equipment, and structures. The Blankenships reside on their property; as we have noted, the Baccouche property is vacant land. Baccouche knew of the easement before he purchased the lot.

In 2004, Baccouche's predecessor in interest, Brian Fitzburgh, wrote to the City asking whether keeping horses is a permitted use on a vacant lot in an RE40-1 zone. The City responded: "Per Section 12.07.01.A.3, 'Keeping of equines in conjunction with the residential use of the lot. . . .' Keeping of equines in conformance to Section 12.07.01.A.3(a) and (b) is an accessory use to a residential use on the property; therefore, residential use has to be first established before keeping equines on the same parcel is allowed."

Baccouche intends to subdivide his property and either sell the lots or develop them for eventual sale. The City informed him that the minimum lot size is 40,000 square feet under Los Angeles Municipal Code section 12.07.01.A.3.

The parties stipulated that "Los Angeles Municipal Code Section 12.07.01A3(a)&(b), effective in its current form since August 22, 1983, applies to the Blankenship and Baccouche properties and allows for the keeping of equines on said properties 'in conjunction with the residential use of the lot,' provided that the keeping of equines is not for commer[cial] purposes and that the lot [has] a minimum size of 17,500 square feet, with no more than one equine per 4,000 square feet of lot space." Los Angeles Municipal Code section 12.03 defines "accessory use" as "a use, which is customarily incidental to that of the main building or the main use of the land and which is located in the same zone or a less restrictive zone and on the same lot with a main building or main use."

Baccouche sued Blankenship to quiet title and for declaratory relief. He contended that the purported easement was for an illegal purpose and is therefore invalid since there is no residence on the Baccouche property. The case was tried on stipulated facts, the deposition testimony of Peter Bumsuk Kim (senior structural engineer for the City Building and Safety Department) and exhibits.

The court found the easement valid and that Blankenship may continue to lawfully use the easement to enjoy horses on the portion of the Baccouche lot that is burdened by the easement. It reasoned: "Both lots have the same residential zoning restrictions. Blankenship's use of the easement is in conjunction with the residential use of his own lot. It is not necessary that the Baccouche lot, which is burdened by the easement, have a residence on it for the easement to be lawful, so long as Blankenship's use of the easement is residential and complies with the limitations of Section 12.07.01."

Baccouche's request for a statement of decision after trial was denied and judgment was entered in favor of Blankenship. This appeal followed.

## DISCUSSION

### I

"Where, as here, a case is tried on stipulated facts and documentary evidence, we make our own determination of the questions of law presented by the stipulated facts. [Citation.]" (*Mercedes-Benz Credit Corp. v. Johnson* (2003) 110 Cal.App.4th 53, 56 [1 Cal.Rptr.3d 396].)

Baccouche argues the municipal zoning ordinance invalidates Blankenship's easement because there is no residence on the servient tenement. Section 12.07.01.A of the Los Angeles Municipal Code provides in pertinent part: "The following regulations shall apply to the 'RE' Residential Estate Zone: [¶] A. Use. No . . . land shall be used . . . except for the following uses, . . . : [¶] . . . [¶] 3. [T]he keeping of equines, . . . *in conjunction with the residential use of the lot*, and subject to the following limitations: [¶] (a) Such activities are not for commercial purposes. [¶] (b) The keeping of equines shall be permitted only on lots having an area of 17,500 square feet or more. Where equines are being kept, the number of such animals being kept shall not exceed one for each 4,000 square feet of lot area." (Italics added.)

 Section 12.03 defines an accessory use as "[a] use, which is customarily incidental to that of the main building or the main use of the land and which is located in the same zone or a less restrictive zone and on the same lot with a main building or main use. The relationship between the more restrictive zones and the less restrictive zones shall be determined by the sequence of zones set forth in Section 12.23B.[1(c)] of this Code." Section 12.03 includes the keeping of domestic animals within the definition of accessory use: "An accessory use shall also include the keeping of domestic animals . . . ."

The first issue is whether these provisions are satisfied by residential use of the dominant Blankenship lot, or whether they require residential use of the servient Baccouche lot. Both sides argue the application of *Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal.App.4th 1487 [83 Cal.Rptr.2d 455] (*Teachers*) to this case. In *Teachers*, a residential apartment building and a commercial building shared an alley. The alley was the boundary between a commercial zone to the south and a residential zone to the north. In 1985, the common owner of both properties executed a declaration of reciprocal easement granting the right to use the easement over the alley solely for access between the adjoining street and the service areas of the two buildings. The declaration of easement specified that the easement was to be used for " 'necessary ancillary use *customary to a service driveway for pick-up, delivery, loading, unloading, trash removal, maintenance and ancillary service activities customary to* or for improvements now or hereafter located' on the two properties." (*Id.* at p. 1490.)

Problems arose over noise, dirt, and smoke created by the commercial building's use of the alley for deliveries, pickups and trash collection. Eventually the owners of the apartment building constructed a chain link fence down the center of the alley. The owners of the commercial building sued for breach of the easement, nuisance, and trespass. Based upon their showing that trash and delivery trucks were unable to use the narrowed alley

space to provide daily basic services to the commercial building, the trial court issued a mandatory preliminary injunction directing the apartment owners to remove the fence.

On appeal, the apartment owners argued that the easement purported to grant commercial use of the portion of the alley zoned for residential use only. The Court of Appeal examined the same zoning ordinance defining accessory use applicable here. Applying section 12.03, the court concluded "an accessory use by a commercial building . . . on its own property is commercial. However, [the commercial building's] use here is employed on the [apartment building's] property, not on its own property. Section 12.21.C.5.(h) provides in relevant part, *'No accessory* building or *use* shall be located on a property in a more restrictive zone than that required for the main building or main use to which it is accessory.' " (*Teachers, supra,* 70 Cal.App.4th at p. 1494.)

Since the residential zone for the apartment building was more restrictive than the zone for the commercial building, the court concluded that the commercial building's use of the apartment building's half of the alley was commercial and hence violated the prohibition against commercial use in a more restrictive zone. (*Teachers, supra,* 70 Cal.App.4th at p. 1497.) The court went on to conclude that the easement could not be used to circumvent the zoning restriction. "Private agreements as to the use of property are immaterial to the validity of a particular zoning ordinance. [Citation.]" (*Ibid.*) Insofar as the easement "purported to grant the owners of the [commercial building] the right to use the residentially zoned half of the alley for commercial purposes, it improperly granted rights which are prohibited by the municipal code." (*Ibid.*)

Following *Teachers,* we examine the permissible zoned use for the property over which the easement runs to determine the enforceability of the easement. The Baccouche property, although zoned for residential use, has not been developed; no residence exists on the property. The municipal code prohibits the keeping of horses there. (L.A. Mun. Code, § 12.07.01.A.3.)

Our case is distinguishable from *Teachers* in that in this case, both the dominant and servient tenements are zoned RE40-1. But under the zoning ordinances, horses can be kept only on a lot with a residence on the premises. The Blankenship lot has a house, but the servient Baccouche tenement does not. To the extent the easement purports to grant Blankenship the right to keep horses on the undeveloped Baccouche lot, it is unenforceable because it would allow a use not permitted by the zoning ordinance, as in *Teachers.*

Blankenship argues this is a misinterpretation of the municipal code. Focusing on the section 12.03 definition of accessory use, he contends that

because such use is defined as "[a] use, which is customarily incidental to that of the main building" or "main use of the land," "[b]y definition, the property in question is the Blankenship property, where residential use has been established." He cites the Los Angeles Municipal Code and *Teachers*, *supra*, 70 Cal.App.4th at page 1496 in arguing that both "define the use of the easement by reference to the main parcel."

We disagree. Section 12.07.01.A, expressly limits the keeping of horses to a residential lot. "No . . . land shall be used . . . except for the following uses, . . . : [¶] . . . [¶] 3. [T]he keeping of equines, . . . *in conjunction with the residential use of the lot* . . . ." (Italics added.) And, as we have seen, section 12.03 defines "accessory use" as "a use, which is customarily incidental to that of the main building or the main use of the land and which is located in the same zone or a less restrictive zone *and on the same lot with a main building or main use*." (Italics added.) Section 12.03 undermines Blankenship's argument that we must view the keeping of horses as use accessory to his lot, which is developed and thus satisfies the residence requirement of the zoning ordinance. Section 12.03 expressly requires that the accessory use be on the *same* lot as the residence. Under these facts, placing the horses on the servient tenement would violate the ordinance.

Blankenship relies on general principles of real property law for the proposition that an appurtenant easement gives the dominant tenement the right to any reasonable use of the easement. This is so, but these principles do not address zoning laws, which may restrict the usage regardless of an easement.

We note that in *Teachers*, the court suggested that the owners of the commercial building could seek a zoning variance to allow commercial use of the entire alley. (*Teachers*, *supra*, 70 Cal.App.4th at p. 1497, fn. 6.) Blankenship also could seek a variance to allow him to keep horses on the dominant tenement even if no house is built on that lot. There may be other ways in which horses could legally be kept on the servient lot, but whether they exist is beyond the scope of this opinion.

## II

Baccouche argues that the easement granted by his predecessor is void because it conflicts with applicable zoning restrictions. He invokes maxims that, in California, contracts must have a "lawful object" (Civ. Code, § 1550,

subd. 3; see § 1596) or are void (Civ. Code, § 1598). Further, a contract whose object is a violation of law is itself against the policy of the law (Civ. Code, §§ 1441, 1667, 1668), and renders the bargain unenforceable. In that case, " ' "[t]he court will leave them [the parties] where they were when the action was begun." ' " (*Kashani v. Tsann Kuen China Enterprise Co.* (2004) 118 Cal.App.4th 531, 541 [13 Cal.Rptr.3d 174], quoting *Wells v. Comstock* (1956) 46 Cal.2d 528, 532 [297 P.2d 961] [contract relating to export, sale or supply of goods, technology or services to Iran violated executive orders of the President of the United States].)

While nothing in the material presented to us shows that the easement was part of, or incident to, a contract, we shall assume that contract principles apply in construing the meaning and effect of the easement grant. (See Civ. Code, § 1066; *Willard v. First Church of Christ, Scientist* (1972) 7 Cal.3d 473, 476 [102 Cal.Rptr. 739, 498 P.2d 987].) Nevertheless, the argument misses the mark, for several reasons.

■ Baccouche's predecessor did not convey that which he did not have; instead, he parted with a twig from the proverbial "bundle of sticks" that made up the entirety of his fee ownership of the land. In doing so, he simply assented to use of a described portion of his property for equine purposes; he did not purport to require such use or to enter into any sort of joint enterprise with the grantee for such use. As is true with virtually all land use, whether the grantee could actually use the property for the purposes stated in the easement was subject to compliance with any applicable laws and ordinances, including zoning restrictions. Land use restrictions limiting use of property and a fee owner's consent to such use are quite distinct. (See *Mullally v. Ojai Hotel Co.* (1968) 266 Cal.App.2d 9, 12 [71 Cal.Rptr. 882] [argument that tennis courts should be allowed to operate with limitations related to lighting and noise better left to planning boards and private developers].) Nor are we dealing with an unconstitutional or otherwise illegal *restriction* on the use of land. (See Rest.3d Property, Servitudes, § 3.1.) Finally, the easement does not purport to authorize, much less require, some kind of malum in se use of property. As we already have discussed, an owner of estate property lacking a residence may apply for a zoning variance. It would be unlikely that zoning authorities would seriously consider such an application unless the applicant could show that he or she owns the property or holds rights from the present or a previous owner for such use.

## DISPOSITION

The trial court's finding that Blankenship has a valid easement is affirmed, but the finding that he may enforce that easement is reversed because the keeping of horses on the Baccouche lot violates the zoning ordinances. Each side to bear its own costs.

Willhite, J., and Manella, J., concurred.