[No. H034931. Sixth Dist. Aug. 23, 2011.]

JAMES C. HILL et al., Plaintiffs and Respondents, v.
SAN JOSE FAMILY HOUSING PARTNERS, LLC, Defendant and
Appellant.

**COUNSEL**

Incorvaia & Associates, Joel L. Incorvaia, Lavanya Ramachandran and G. Ehrich Lenz for Defendant and Appellant.

Law Office of Scott S. Furstman, Scott S. Furstman; Law Office of Paul J. Derania and Paul J. Derania for Plaintiffs and Respondents.

OPINION

**PREMO, J.**—Respondents James C. Hill and Dawn L. Hill as trustees under a revocable trust dated February 17, 1977 (the Hills), and appellant San Jose Family Housing Partners, LLC (LLC), own adjacent parcels of land located along U.S. Highway 101 in San Jose, California. Since the 1970's, the Hills have owned and operated a two-sided commercial billboard on a section of LLC's parcel, near the joint property line. In 2000, the Hills and LLC's predecessors in interest entered into a written easement agreement relating to the Hills' use of the billboard. In 2007, after learning that LLC intended to construct a multiunit residential development on its property, which would obstruct the view of the billboard's north face, the Hills sued LLC for injunctive relief and damages.

In a bifurcated proceeding, the court first rejected LLC's affirmative defense that the easement is unenforceable because the billboard was constructed and maintained in violation of county and city building codes and ordinances. The court then found that LLC's development interfered with the Hills' easement by obstructing the billboard's visibility and awarded damages in the amount of $778,539, which included lost future profits through 2037.

After judgment was entered, LLC moved for a new trial based on newly discovered evidence that the City of San Jose (City) was seeking removal of the billboard and such removal would substantially reduce or eliminate the lost profits portion of the Hills' damages award. The motion was denied.

On appeal, LLC contends that the trial court erred by (1) rejecting its illegality defense to the easement agreement; (2) interpreting the easement agreement to include a view easement; and (3) denying its motion for new trial. LLC also brings a motion pursuant to Code of Civil Procedure section 909 and California Rules of Court, rule 8.252 seeking to introduce new evidence for our consideration on appeal. We deferred resolution of the motion pending consideration of the appeal and will now deny it.

We disagree with LLC's arguments regarding the rejection of its illegality defense and the interpretation of the easement agreement. However, we agree that the trial court should have granted its motion for new trial. Accordingly, we shall reverse both the judgment and the order denying the motion for new trial. We shall remand the matter for retrial on the issue of damages, but direct the trial court to stay the retrial pending a final resolution of the City's efforts to remove the billboard. ·

I. *Factual and Procedural Background*

In 2007, LLC acquired real property located at 305 San Antonio Court in San Jose, California. The Hills own an adjoining parcel, and LLC's property

is burdened by an easement agreement in favor of the Hills' property dated December 21, 2000 (the easement), the purpose of which is, as follows: "To do all things necessary and incidental to the operation of the business of a billboard, including but not limited to, placement, construction, reconstruction, maintenance and repair of the billboard (and including an electrical power easement for the same)[, and] [¶] [t]o provide ingress and egress as well as an electrical power easement across the said easement, all to facilitate the billboard business or any other lawful purpose associated with the use of the Dominant Tenement." The easement also expressly provides, "No structures, vegetation, or other objects will be allowed to interfere with or encroach on the easements in the above described Grant Deed and as herein referenced."

LLC submitted plans to construct an 86-unit residential development project on its property to the City, and the Hills, believing that this project would interfere with the visibility of their billboard, formally objected. The City declined to halt the development, concluding that protection of an easement was not within its purview. The Hills subsequently filed a verified complaint against LLC and two other defendants[1] seeking monetary and injunctive relief.

The parties agreed to a court trial[2] and bifurcated the issue of LLC's affirmative defense that the easement agreement could not be enforced on the grounds that the billboard was an illegal nonconforming structure. After taking evidence on that question, the court decided the issue in favor of the Hills.

In the second phase of the trial, the parties argued whether the easement agreement could be interpreted to include a view easement and if so whether and to what extent the view of the billboard was obstructed. The court also took evidence relating to the amount of damages to be awarded for any breach of the easement agreement. In its March 25, 2009 decision and order, the trial court found that the easement agreement must be interpreted "to allow viewing of the billboard," and that LLC's development violated the easement agreement by partially obstructing that view. The court awarded damages to the Hills in the amount of $778,539.

Following entry of judgment in favor of the Hills, LLC moved for a new trial. LLC's motion was based on "newly discovered material evidence," specifically a compliance order from the City directing LLC to remove the

---

[1] One of these defendants was dismissed before trial. The court entered judgment in favor of the other defendant following trial. Neither of those defendants is a party to this appeal.

[2] We relate the relevant trial evidence and testimony in conjunction with our discussion of the issues raised on appeal.

"illegally constructed billboard" from its property. LLC argued that because the damages awarded to the Hills were based on a calculation of the future rental income generated by the billboard that future income would be eliminated when the billboard was removed. The trial court denied LLC's motion.[3]

## II. Discussion

### A. LLC's Code of Civil Procedure section 909 motion

LLC filed a motion pursuant to Code of Civil Procedure section 909[4] and California Rules of Court, rule 8.252[5] seeking to admit new evidence in the pending appeal. LLC later supplemented its motion, submitting additional new evidence it wished this court to consider on appeal. The evidence submitted by LLC consists of (1) a nuisance abatement cease and desist order, purportedly served on the Hills by the City on April 8, 2010, and (2) a decision by the City's appeals hearing board (resolution No. 11-05) adopted January 27, 2011, directing LLC and the Hills to "immediately cease and desist" operation and maintenance of the billboard and imposing administrative penalties on the Hills.

LLC contends this court should admit and consider this new evidence as it will assist the court in resolving the issues of the billboard's illegality and the future lost income component of the Hills' damages award. LLC has also requested that this court take judicial notice of resolution No. 11-05.

The Hills' opposition papers contend LLC's motion is an improper attempt to retry its case on appeal. According to the Hills, neither the cease and desist order nor the resolution constitutes newly discovered evidence nor will those documents assist the court in determining the issues presented on appeal.

By order dated September 24, 2010, we deferred resolution of LLC's motion pending consideration of the merits of the appeal.

■ Code of Civil Procedure section 909 permits the taking of additional evidence for any purpose "in the interests of justice." That section further encourages the taking of additional evidence when doing so will allow a

---

[3] The trial court's written order, filed November 16, 2009, was not included in the record on appeal. On our own motion, we augmented the record to include that document.

[4] Code of Civil Procedure section 909 provides in part, "In all cases where trial by jury is not a matter of right or where trial by jury has been waived, the reviewing court may make factual determinations contrary to or in addition to those made by the trial court."

[5] California Rules of Court, rule 8.252(c)(1) states, "A party may move that the reviewing court take evidence."

cause to "be finally disposed of by a single appeal." "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.] This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law . . . .' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal. 'Although appellate courts are authorized to make findings of fact on appeal by Code of Civil Procedure section 909 and [former] rule 23 of the California Rules of Court, the authority should be exercised sparingly. [Citation.] *Absent exceptional circumstances, no such findings should be made.*' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 [2 Cal.Rptr.3d 683, 73 P.3d 541].)

We do not find such exceptional circumstances here. The new evidence presented by LLC for our consideration is not dispositive of the billboard's illegality. As discussed below, the illegality of the billboard is not a valid defense to the Hills' action to enforce the easement agreement.

Furthermore, while it appears the City may have reached the end of its administrative nuisance abatement proceedings against the Hills, it is still far from clear who will ultimately prevail since the Hills may still pursue judicial relief from the City's action. A final resolution could be months—perhaps years—away. Accordingly, we conclude that admitting the documents submitted by LLC and attempting to use them to make findings of fact in this proceeding do not further the interests of justice.

Accordingly, LLC's motion to admit new evidence is denied. We also decline to take judicial notice of resolution No. 11-05 as the document is not relevant to our consideration of the issues raised on appeal. Even if it were relevant, we could take judicial notice only that the document exists, not of the truth of its contents. (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063–1064 [31 Cal.Rptr.2d 358, 875 P.2d 73], overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257 [63 Cal.Rptr.3d 418, 163 P.3d 106].)

B. *LLC's illegality defense*

1. *Trial evidence and testimony*

a. *LLC's witnesses*

Don Gross, a rehabilitation building inspector employed by the City, investigated the records pertaining to the billboard and concluded it was

unpermitted. In the course of this investigation, Gross reviewed the May 7, 1970 building permit application filed with the County of Santa Clara (County)[6] for construction of the billboard and found the application did not reflect that any inspections had been undertaken in connection with the project. According to Gross, under the Uniform Building Code in effect in 1970, a building permit was required for a billboard of the size constructed on the property, and it was the owner's or contractor's responsibility to arrange for inspections of that billboard by the building department. Gross testified that, without the required inspections, a permit application becomes "null and void" after a certain period of time.

Gross examined the use permit granted by the County in 1970 with respect to the billboard which allowed construction of "an advertising structure of 12 feet by 48 [feet]." According to Gross, if a larger billboard were constructed on the site, for example, a billboard measuring 14 feet by 48 feet, it would not be in compliance with the use permit. If the owner wished to add to the billboard, an additional building permit would have to be issued.

Based on his review of photographs of the billboard,[7] Gross believed that one side of the structure had been enlarged sometime between 2002 and 2007 with additional supports added to the structure, but he could not locate any permits for that construction. According to Gross, a billboard erected either without a valid building permit or not in conformance with the use permit originally issued by the County would not comply with current City building code and zoning laws.

Gross stated that a nonconforming billboard owner could attempt to bring the structure into compliance by requesting a new permit and "approval for a structure that was built without proper approvals or permits." On cross-examination, however, he stated that no such permit could be issued to the Hills because the municipal code now prohibits the construction of billboards within City limits. Gross further admitted that he has never worked for the County and has no personal knowledge of the policies and procedures followed by the County's building and planning department in 1970.

Don Hughes testified as the County's person most knowledgeable regarding building permits issued "in the 1970 [sic] era." He reviewed a number of building permits issued by the County's building department in 1969 and 1970 for billboards and other signs. Each of those permits reflected that one or more inspections had been conducted on the associated projects. Hughes

---

[6] In 1970, the subject property was located in unincorporated Santa Clara County. It was later annexed by the City at some undisclosed time.

[7] Gross admitted that he had not gone on site and physically inspected the billboard.

could not locate a written County policy or procedure requiring that billboards be inspected but, since billboards were not specifically exempted from inspection under the 1964 Uniform Building Code, inspections were required.

As far as Hughes could determine from his examination of the County records from the relevant timeframe, an application for a building permit would become the building permit, but only when the structure was inspected and the permit application signed by a building official. During the construction process, various inspections were required, but if no inspections were made within 180 days of the application date, both the permit and site approval would expire. According to Hughes, a billboard similar to the one at issue in this case would have required a foundation inspection and, depending on the type of construction used, anywhere from two to five additional inspections, all of which had to be scheduled by the permit owner. The County building department did not proactively follow up on construction projects to ensure required inspections were taking place.

Hughes examined the permit application for the Hills' billboard and noted that no inspections were recorded anywhere on it. He further testified that if the actual construction of the billboard varied in any way from the plans submitted with the permit application, the permit would be invalid.

b. *The Hills' witnesses*

Roger Siberts was employed by the Hills in the late 1960's and early 1970's as an administrative assistant. Part of his job was to obtain permits for billboards. Siberts would "take in drawings of the sign, plot plan of the property, showing proper setbacks and get a permit from the City or the County for a sign of a given size at a given setback." During his tenure with the Hills, he obtained "hundreds" of billboard permits. Siberts would submit the paperwork to the County for review and "they would look it over, make any modifications they saw fit and then usually stamp the paperwork." The process would take anywhere from 10 to 20 minutes in all. Once the paperwork was approved, the Hills would send out a crew to construct the sign. Siberts did not recall that inspections were ever required, nor was he ever told by anyone at the City or the County such inspections were necessary.

Donald Lawson currently operates an outdoor advertising business and has worked in the outdoor advertising business since 1961. Lawson has owned billboards in the past and has been involved in the construction of between 120 and 150 billboards "off and on since 1961," though his company did not have a California contractor's license in 1970. According to Lawson, there was no inspection process for constructing billboards in the County or in any

other county in which he operated, and it was his understanding the State of California had sole control over outdoor advertising. In the 1970's, he advised an entity called "Leonard & Company" on the construction of the billboard in question.

Lawson admitted he has never seen the building permit for the Hills' billboard, nor was he aware what plans were submitted to the County in connection with the permit application. In assisting Leonard & Company on the construction of the billboard, he used a design he had used on other billboards where two poles supported the superstructure. However, the plans submitted to the County with the application indicated the billboard would have four structural supports.

Lawson knew the Uniform Building Code applied to construction of billboards, but he never reviewed its provisions pertaining to inspections of construction projects. Instead he relied on the engineer he employed who was "very conversant with the Uniform Building Code," but that engineer never said anything to Lawson about the billboard requiring inspections.

Frederick Wilhelm, president of Leonard & Company, testified that his company "locates, leases land, obtains permits, constructs billboards, owns them and rents them out to advertisers." Since Wilhelm started with the company in 1966, he estimated it has constructed well over 200 large, permanent billboards, including the one at issue in this litigation. Leonard & Company also added and removed billboard extensions, which are usually temporary in nature. According to Wilhelm, a new building permit was not required for an extension to an existing billboard, though he acknowledged "every city has different regulations."

In 1970, Leonard & Company obtained a use permit from the County allowing construction of the Hills' billboard. At the same time, Leonard & Company also submitted an application for an outdoor structure permit with California's Division of Highways Outdoor Advertiser Section. Leonard & Company retained Lawson to construct the billboard once the permit application was stamped, but Wilhelm never contacted the County to inspect this, or any other, billboard at any time during its construction. In his experience, the County did not require such inspections.

On cross-examination, Wilhelm admitted he never asked anyone at the County if inspections were required on billboard construction projects, nor was he affirmatively told by anyone at the County that such inspections were not required.

### 2. *November 18, 2008 order regarding illegality defense*

In a written order, the trial court rejected LLC's illegality defense, finding the Hills were not barred from attempting to enforce the easement because "[r]egardless of whether the billboard was constructed illegally, allowing motorists to see the billboard does not violate any law identified by [LLC]." The trial court continued, "if the billboard was not legally constructed or operated, the courts should not assist [the Hills] in continuing to operate and profit from their illegal business. [Citations.] However, even if the billboard was not constructed properly or lawfully expanded, [LLC] ha[s] not explained how the continued use of the billboard is unlawful or under what authority [LLC] or some other entity would be entitled to require the billboard to be removed."

### 3. *Standard of review and analysis*

The trial court issued its order denying LLC's affirmative defense after hearing the testimony and reviewing the evidence presented in this matter. When the facts are undisputed, the effect or legal significance of those facts presents a question of law, which we review de novo. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

■ "A contract must have a lawful object. (Civ. Code, § 1550.) Any contract which has as its object the violation of an express provision of law is unlawful. (Civ. Code, § 1667, subd. 1.) The object of a contract is the thing which it is agreed, on the part of the party receiving the consideration, to do or not to do. (Civ. Code, § 1595.) The object must be lawful when the contract is made. (Civ. Code, § 1596.) And that part of the contract which is unlawful is void. (Civ. Code, § 1599.)" (*Homami v. Iranzadi* (1989) 211 Cal.App.3d 1104, 1109 [260 Cal.Rptr. 6].)

On appeal, LLC renews its argument that the easement agreement is not enforceable because the billboard is, for a number of reasons, an illegal structure. LLC points to the evidence it presented at trial demonstrating the billboard was (1) not constructed in conformance with either the use permit or the building permit issued by the County; (2) never inspected during its construction, which invalidated the building permit; (3) illegally enlarged to 18 feet by 48 feet in violation of San Jose Municipal Code section 23.02.1200; and (4) not constructed or enlarged by a licensed contractor.

LLC cites *Teachers Ins. & Annuity Assn. v. Furlotti* (1999) 70 Cal.App.4th 1487 [83 Cal.Rptr.2d 455] (*Teachers*) and *Baccouche v. Blankenship* (2007) 154 Cal.App.4th 1551 [65 Cal.Rptr.3d 659] (*Baccouche*) for the proposition that an easement may not be enforced where its use results in a violation of

law. According to LLC, the trial court erred in narrowly interpreting these cases, focusing only on the intended use of the billboard for advertising, which is a legal purpose, rather than on the illegality of its existence. LLC argues that if the billboard is itself illegal, its use for advertising is also illegal. Furthermore, LLC maintains the Hills cannot cure this illegality because the City will not approve legal nonconforming use status for a billboard which was not legally built in the first place, especially since its construction violated the terms of the use permit and it was illegally enlarged.

In *Baccouche*, previous owners granted Blankenship an easement over three-quarters of an acre of their property so he could keep horses on the easement area, part of a large parcel later purchased by Baccouche. The municipal code allowed keeping of horses on properties so long as there was a residence on the lot. Although Blankenship lived on his property, there was no residence on Baccouche's property. Baccouche sued Blankenship to quiet title, contending the easement was for an illegal purpose and was invalid because there was no residence on Baccouche's property. The Court of Appeal reversed the trial court's finding that Blankenship could enforce his easement. The municipal code prohibited keeping horses on the Baccouche property because it had no residence, and the Court of Appeal held the easement was unenforceable because it allowed a use not permitted by the zoning ordinance. (*Baccouche, supra,* 154 Cal.App.4th at p. 1556.) The court, however, rejected Baccouche's argument the easement granted to Blankenship was void because it conflicted with applicable zoning restrictions. *Baccouche* distinguished between land use restrictions limiting use of property and a fee owner's consent to that use, and affirmed the trial court's finding that Blankenship had a valid easement. (*Id.* at pp. 1557–1559.) Thus although the easement was unenforceable because it violated the zoning ordinance, the violation did not make the easement itself invalid.

In *Teachers*, an alley separated two parcels of property, one owned by plaintiff and the other by defendants. Defendants' property was zoned for multiple dwellings and was improved with a large apartment building, whereas plaintiff's property was zoned for commercial use and was improved with a highrise commercial office building. The properties extended to the midpoint of the alley. A previous owner of both properties executed a declaration of reciprocal easement for the alley, giving access to both properties. Because of increasing noise from workers, deliveries, and trash collection at plaintiff's property, defendants built a fence down the center of the alley. Plaintiff sued defendants for breach of the reciprocal easement, nuisance, and trespass, and applied for a preliminary injunction to remove the fence and repair the easement area to its prefence condition, based on the violation of the reciprocal easement by building the fence. (*Teachers, supra,* 70 Cal.App.4th at pp. 1490–1491.) The trial court granted the injunction, requiring defendants to remove their fence. The Court of Appeal reversed,

concluding plaintiff's use of the residential half of the alley was commercial in nature and violated the municipal code prohibiting use of a property in a more restrictive zone. (*Id.* at p. 1496.) The court also held the reciprocal easement could not grant by private agreement that which was prohibited by zoning. (*Ibid.*) Municipalities enacted zoning ordinances through the exercise of their police power, which may not be limited by private contracts. (*Id.* at pp. 1496–1497.)

■ Both *Teachers* and *Baccouche* are distinguishable. In each of those cases, the property's *use* was illegal, and the parties could not enter into a valid easement agreement which allowed for such illegal use. Here, the object of the instant agreement was the use of real property for the purposes of operating the business of a billboard. There is nothing illegal about that, nor did LLC present evidence that the use of the property for advertising purposes violated any zoning restriction or other ordinance. "The true rule applicable to this situation was stated in *Wayman Inv. Co.* v. *Wessinger* [(1910)] 13 Cal.App. 108, 110 [108 P. 1022], as follows: 'Although there may be some illegal features indirectly connected with a transaction involved in a suit, yet the plaintiff may recover if his cause of action is otherwise legitimate, and he can make out his case without calling to his aid the illegal agreement. The test of whether the demand can be enforced at law is whether the plaintiff requires the aid of the illegal contract to establish his case.' " (*Aaker v. Smith* (1948) 87 Cal.App.2d 36, 47 [196 P.2d 150].) In *Aaker*, the defendants were bar owners who leased part of their premises to a restaurant. In a suit by the restaurant operator for wrongful eviction, the defendants sought to avoid the terms of a lease by showing that the lease violated the requirements of state law pertaining to the operation of the bar. (*Id.* at p. 46.) The appellate court rejected the argument noting, "A leasing of premises— even of premises upon which a bar is located—for restaurant purposes is certainly legal. The restaurant could be operated whether or not a bar was also operated. The plaintiff's right to occupy such premises for restaurant purposes must be considered separate and apart from any intention on the part of defendants to violate the law in the respect that they now so cheerfully admit." (*Id.* at pp. 46–47.)

The same is true here. The Hills' action to enforce the easement is entirely legitimate because the property's use for advertising purposes is not illegal in and of itself. Although the instrumentality of that use, i.e., the billboard, may be illegal, that is not a bar to the enforcement of the agreement.

C. *Interpretation of the easement agreement*

In its March 25, 2009 decision and order, the trial court rejected LLC's "narrow interpretation of the easement," concluding such an interpretation

would render meaningless the easement's prescription allowing the Hills "[t]o do all things necessary and incidental to the operation of the business of a billboard . . . ."

LLC argues the trial court erred in finding the easement allowed for an unobstructed view of the billboard, because a landowner has no easement for an unobstructed view in the absence of an express grant of covenant. The easement agreement here only permits the Hills the right to operate a billboard and provide electrical power on the southeasterly 30 feet of LLC's property, along with a concomitant easement for ingress, egress, installation and maintenance of electrical power over the northeasterly 18 feet of LLC's property.

■   An easement agreement is subject to the rules of interpretation that apply to contracts. (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 521 [67 Cal.Rptr. 761, 439 P.2d 889]; Civ. Code, § 1066.) The scope of an easement is determined by the terms of the grant, or by the nature of the enjoyment. (Civ. Code, § 806.) As with all contracts, the paramount goal of interpreting a writing creating an easement is to determine the intent of the parties. (*Mosier v. Mead* (1955) 45 Cal.2d 629 [290 P.2d 495].) The parties' intent is ascertained from the language of the contract alone, "if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638; see also *id.*, § 1639 [intention is ascertained by writing alone, if possible].)

LLC's interpretation focuses strictly on the description of the property set forth in the deed, and only tangentially references the easement's purpose as described in the easement agreement itself. LLC contends the easement agreement permits the Hills the right to operate a billboard business, but does not prohibit LLC from developing its property since such development does not restrict the Hills from operating, maintaining or accessing the billboard. Rather, according to LLC, it simply reduces the profitability of that business. We agree with the trial court that this is too narrow an approach.

■   It is true a property owner does not have an "easement over adjoining land for light and air in the absence of an express grant or covenant." (*Katcher v. Home S. & L. Assn.* (1966) 245 Cal.App.2d 425, 429 [53 Cal.Rptr. 923].) This is not a case, however, where a resident has sued his neighbor for erecting a structure that blocks his afternoon sun, the cool morning breeze or, as in *Katcher*, "destroy[s] [his] panoramic view." (*Id.* at p. 427.) Here, the express purpose of the easement is to allow for the operation of a billboard business. Since the point of a billboard is that it be visible to potential consumers, it is clear the intent of the easement was to prohibit unreasonable interference with the structure's visibility. Such interference would necessarily impinge on the Hills' operation of the billboard business.   ■   Any use

of the servient estate that results in an unreasonable interference with the easement's purpose is prohibited. (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 702–703 [43 Cal.Rptr.2d 810].) While the agreement does not include the terms "view" or "line of sight," it is clear the parties to the easement agreement necessarily intended that the billboard must be visible to passing motorists.

### D. *Motion for new trial*

#### 1. *Factual and procedural background*

LLC's new trial motion was based on Code of Civil Procedure section 657, subdivision 4, which provides that a party may apply for a new trial based on "[n]ewly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial." LLC's newly discovered evidence consisted of a January 29, 2009 compliance order from the City directing removal of the "illegally constructed billboard" located on LLC's property. LLC argued that if the City prevails in the administrative proceedings, the Hills' damages award, which includes projected lost billboard revenues through 2037, would be substantially reduced or negated.

In opposition, the Hills argued that the evidence in question was not newly discovered since LLC called witnesses at trial, including inspectors from the City and the County, who testified the billboard was allegedly illegal. LLC failed to move for reconsideration of the trial court order rejecting its illegality defense. The Hills also argued it was speculative to presume that the City would prevail in its efforts to remove the billboard and the Hills have several meritorious defenses to the City's enforcement action. The Hills also suggested that LLC's motion was actually a motion for new trial based on excessive damages under Code of Civil Procedure section 657, subdivision 5, rather than newly discovered evidence. Finally, the Hills contended LLC could not show that its substantial rights were affected by any error or that it did not receive a fair trial.

After hearing argument, the trial court denied the motion, finding "that the evidence is not, quote, newly discovered, unquote—as that phrase has been interpreted by the cases. And I believe that it is in effect speculative to consider what might have happened."

#### 2. *Analysis*

■ Where a party seeks a new trial on the grounds of newly discovered evidence, "[t]he essential elements which must be established are (1) that the

evidence is newly discovered; (2) that reasonable diligence has been exercised in its discovery and production; and (3) that the evidence is material to the movant's case." (*Schultz v. Mathias* (1970) 3 Cal.App.3d 904, 909–910 [83 Cal.Rptr. 888].) "The newly discovered evidence must be material in the sense that it is likely to produce a different result." (*Id.* at p. 910.)

On appeal from an order denying a motion for a new trial, we review the entire record, including the evidence, and make an independent determination as to whether the claimed error was prejudicial. (*City of Los Angeles v. Decker* (1977) 18 Cal.3d 860, 872 [135 Cal.Rptr. 647, 558 P.2d 545].)

■ The newly discovered evidence presented to the trial court by LLC consisted of a compliance order from the City. The order, which was issued after the conclusion of the trial, indicates the City has determined the billboard to be an illegal structure and directs its removal. Presumably, the trial court determined the order did not constitute newly discovered evidence because LLC's principal defense during trial was that the billboard was in fact an illegal structure. However, LLC did not offer the testimony of Gross, a City employee, in order to establish official City policy regarding the billboard, nor was there any suggestion he was competent to testify as to that policy. All Gross could offer was his expert opinion about whether or not the billboard was an illegal structure. As the Hills acknowledged in their opposition to the motion for new trial, the billboard "was constructed approximately forty years ago and at least at the time of trial, had never been cited nor had any remedial action been taken by any government or entity." At the time of trial, that was still the case—the City had taken no action to declare the billboard to be illegal or seek its removal. It was only after the trial concluded that the City identified the code violations and issued its compliance order. LLC could not present evidence of something, e.g., the City's position the billboard was an illegal structure that had to be removed, that did not exist.

Turning to the issue of materiality, it is clear removal of the billboard would likely produce a different result on the issue of the Hills' damages. In calculating these damages, the trial court relied on a spreadsheet which projected the Hills' lost advertising revenues out to the year 2037. If the City succeeds in having the billboard removed, the Hills' actual lost advertising revenues would be less, possibly much less, than the $778,539 initially awarded. Under those circumstances, if the award were allowed to stand, LLC would essentially be forced to pay the Hills for advertising revenues they never could have earned. Conversely, if the Hills prevail and the billboard remains in place, the parties could resubmit their evidence of the Hills' projected revenue loss.

We find the trial court erred in denying LLC's motion for new trial on the issue of damages. We will therefore reverse the trial court's order and remand for retrial on the issue of damages.

Recognizing that there has been no final determination in the proceedings between the Hills and the City regarding the billboard, and that the Hills' damages cannot be reasonably calculated until that determination has been made, we will direct the trial court to stay the retrial of the damages issue until the dispute between the Hills and the City has been resolved.

III. *Disposition*

The judgment and the order denying LLC's motion for new trial are reversed. The matter is remanded to the trial court with directions to enter a new order granting the motion for new trial on the issue of damages. The trial court is further directed to enter a stay of the proceedings in the present action pending the resolution of the proceedings between the City and the Hills regarding the removal of the billboard.

Rushing, P. J., and Elia, J., concurred.