[No. C069564. Third Dist. Nov. 13, 2012.]

COTTONWOOD DUPLEXES, LLC, Plaintiff and Respondent, v. SETH BARLOW, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION[*]]**

---

[*]Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part III of the Discussion.

## COUNSEL

Wells, Small, Fleharty & Weil and Tyler Maize Lalaguna for Defendant and Appellant.

Arthofer & Tonkin Law Offices and Kenneth B. Arthofer for Plaintiff and Respondent.

## OPINION

**ROBIE, Acting P. J.**—In this quiet title action, the trial court narrowed and shortened a road and utility easement that a predecessor of plaintiff Cottonwood Duplexes, LLC (Cottonwood), had granted to defendant Seth Barlow because, in the court's view, "the reasonable use requirements of [Barlow's property] both presently and in the future do not require the full size and scope of the [original] easement."

On appeal, Barlow asserts that no "recognized rule of law . . . authorized [the trial court] to terminate [his] property rights" by reducing the size of his easement against his will, no matter what the evidence showed. We agree. Accordingly, we will reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 1978, Ned Gatchett recorded a parcel map dividing certain property adjacent to Interstate 5 in Shasta County into four parcels. (A copy of the recorded parcel map No. 833-78 is attached as appen. A to this opinion.) Parcel No. 4 was adjacent to the south side of Rhonda Road. Parcels Nos. 1, 2, and 3 lay next to each other south of parcel No. 4, with the north side of each parcel adjacent to the south side of parcel No. 4. (Parcel No. 1 was the westernmost of the three parcels; parcel No. 3 was the easternmost, lying adjacent to Interstate 5; parcel No. 2 lay between the other two parcels.) As depicted on the map, access to parcels Nos. 2 and 3 could only be had by a private road and public utility easement which was to run across the northern 60 feet of parcels Nos. 1, 2, and 3.[1] The parcel map identified the easement as Gatchett Lane.

In September 1978, a week after the parcel map was recorded, Ned and his wife, Benita—who were the owners of parcels Nos. 2, 3, and 4—and James

---

[1] It appears that at the time of this property division there was a 15-foot-wide road made of gravel and asphalt that ran along the north part of the 60-foot-wide strip that became the road and utility easement. Immediately adjacent to the road on the south side was an irrigation ditch that was used to irrigate parcels Nos. 1, 2, and 3. The road ultimately turned south "into the middle of what became parcel 1," providing access to that parcel and the house on it.

and Nita Leak—who were the owners of parcel No. 1—recorded a road maintenance agreement with respect to Gatchett Lane.[2] By means of this agreement, the Gatchetts and Leaks granted to each other the easement running across the northern 60 feet of parcels Nos. 1, 2, and 3, as depicted on the parcel map. Pursuant to the terms of the agreement, the easement was "for the benefit of and appurtenant to the" parties' properties (including parcel No. 4) and "the burdens and benefits of th[e] agreement [were to] run to the grantees and vendees, or other successors in interest, of the parties."

In 1989, Ned Gatchett subdivided parcel No. 4 on map No. 833-78 into six parcels, numbered 1 through 6 from west to east. (A copy of the tentative tract map showing this subdivision is attached to this opinion as appen. B.) In 2002, Gatchett sold the easternmost parcel (parcel No. 6) to Barlow. Included in the grant deed to Barlow was "[a]n easement for road and utility purposes over the North 60 feet of Parcel 1, 2 and 3 as shown on Parcel Map No. 833-78 . . . ."

Sometime after 2002, Gatchett sold parcels Nos. 2 and 3 on map No. 833-78. Thereafter, Trion Development (Trion) proposed a 16-lot subdivision (Cottonwood Creek Meadow) for those parcels. (A copy of tract map No. 1912 showing this subdivision is attached to this opinion as appen. C.) Access to the Cottonwood Creek Meadow subdivision was to be provided by three new public roads. The first, Cremia Place, would run in a southerly direction parallel to Interstate 5. The second, Manzi Way, would run west from Cremia Place approximately 50 feet south of and parallel to the Gatchett Lane easement. The third, Silvario Court, would run south from Manzi Way to a cul-de-sac.

The first phase of the subdivision project involved 11 lots located south of Manzi Way. The second phase involved the remaining five lots located north of Manzi Way. Each of the lots in the second phase was 107 feet deep, but the Gatchett Lane easement covered the northern 60 feet of each lot. Accordingly, a note on the tract map stated as follows: "THERE SHALL BE NO BUILDING ON LOTS 1 THRU 5 OF PHASE 2 UNTIL GATCHETT LANE IS QUIT CLAIMED IN ITS ENTIRETY OR THE 60-FOOT GATCH-ETT LANE ROAD AND UTILITY EASEMENT IS REDUCED TO 15-FOOT (ALONG THE NORTHERLY PROPERTY LINE)."

Cottonwood was the lender that financed Trion's development of the subdivision. When Trion defaulted on its loan obligations, Cottonwood

---

[2] From what can be inferred from the evidence, the division of the Gatchetts' property was accomplished (at least in part) so that the Gatchetts could sell the Leaks the property that became parcel No. 1, which lay at the end of the existing asphalt road referred to as Gatchett Lane.

foreclosed and became the owner of the subdivision. When Cottonwood took over the project, Manzi Road and Silvario Court had been completed and accepted as public roads and seven of the 11 lots in phase one of the project had been built out.

One of Cottonwood's principals, Bob Meissner, investigated the use of Gatchett Lane and determined that "it came down to a single family residence," which was apparently the house on parcel No. 1 of map No. 833-78 previously owned by the Leaks. Because the owners of that property (the Greens) now had access to their property via Manzi Way, they no longer needed to use Gatchett Lane, which by now was a dirt road, and so Cottonwood negotiated a settlement with the Greens under which they gave up their right to the Gatchett Lane easement. Thereafter, most of the remaining adjacent property owners also agreed to abandon their rights to the Gatchett Lane easement.[3] The sole holdout was Barlow. Cottonwood offered Barlow as much as $30,000 to abandon his easement, but he refused.

Unable to obtain the easement by purchase, Cottonwood commenced this action against Barlow in August 2010 by filing a complaint for declaratory relief and to quiet title to get the court to give it the easement for nothing. Cottonwood sought a judicial determination that Barlow's easement "has been extinguished and/or is otherwise no longer legally recognizable as a result of the original intentions of the developer who created the Gatchett Lane easement, subsequent changes to the subdivision map and reasonable needs and historical uses by the parties. In the alternative, [Cottonwood sought] a judicial determination that the scope and width of the . . . Gatchett Lane easement has been significantly reduced and that [the] easement should be determined to be extinguished and/or not legally recognizable except for such portion less than or not exceeding 15 feet in width located at the northern most end of the Gatchett Lane easement."

The case was tried in June 2011. The trial court found that the Gatchett Lane easement was originally created to serve the access needs of the property located west and south of the easement (i.e., parcels Nos. 1, 2, and 3 on parcel map No. 833-78) (appen. A). Subsequently, as a result of "evolution of [the] subdivision mapping," Manzi Way was created to provide primary access to the southerly and westerly parcels previously served by the Gatchett Lane easement. The court further found that the other adjacent landowners had either voluntarily relinquished their rights to the easement or had agreed

---

[3] The owners of parcel No. 4 on the 1989 tract map (appen. B) only partially abandoned the easement, retaining an easement for ingress and egress to their property over a strip of land 12 feet wide. The owners of parcel No. 5 on the 1989 tract map (appen. B), who were initially defendants in this action, agreed to abandon the Gatchett Lane easement after the action commenced, but in its place Cottonwood granted them a 12-foot-wide easement also.

to reduce the easement to 12 feet. Also, Cottonwood's experts had testified "there was no reasonable likelihood that the County of Shasta would ever allow any type of primary access road to service . . . Barlow's property within the confines of the Gatchett Lane easement" and at best the county "might possibly allow a commercial driveway entrance as wide as 32 feet." All utilities serving Barlow's property are located on Rhonda Road, and the telephone poles are on Barlow's property north of the easement. Also, Barlow's property has "adequate and full access from both the north on Rhonda Road and east from Cremia Place without having to resort to any access from the Gatchett Lane easement."

Based on these facts, the court ruled that "the reasonable use requirements of the Barlow Parcel both presently and in the future do not require the full size and scope of the Gatchett Lane easement." The court also noted that reducing the size of Barlow's easement consistent with his "reasonable access requirements" would "allow [Cottonwood] to proceed with appropriate use of its property and its approved subdivision without the impediment of the full 60 foot wide Gatchett Lane easement across the entire northerly boundary of [Cottonwood]'s property," which would "constitute[] imposition of the least burden on [Cottonwood]'s parcel within the proper confines of the law relating to easements." Accordingly, the court determined that Barlow's easement should "not exceed a strip of land thirty-two feet (32') in width spanning the northerly most border of the Servient Tenement commencing at Cremia Place on the easterly most border of the Servient Tenement and continuing west until the thirty-two foot (32') strip of land reaches the westerly border of Lot 5 (Phase 2 of Tract Map No. 1912)." (A depiction of the more limited easement the court ordered is attached to this opinion as appen. D.) As to the remainder of the original easement Gatchett granted to Barlow in 2002, the court quieted title in favor of Cottonwood and declared that Barlow and his successors were to have "no right, title, estate, interest or lien of an[y] type whatsoever in and to" that property. The court also limited Barlow's easement to "ingress and egress purposes," thus eliminating Barlow's utility easement altogether.

The court entered judgment in August 2011. Barlow timely appealed.

## DISCUSSION

### I

*Partial Extinguishment of a Granted Easement*

The 2002 grant deed from Gatchett gave Barlow an easement for road and utility purposes over a 60-foot-wide strip of adjoining property that ran the

length of the southern boundary of his lot (and beyond). By its decision in this case, the trial court narrowed Barlow's easement by 28 feet and shortened it so that it runs just over half the length of his property. (See appen. D.) The court also limited the use of the easement to ingress and egress only. In other words, the trial court partially extinguished Barlow's road easement and completely extinguished his utility easement based on the court's determination that Barlow did not reasonably require, and in the future would not reasonably require, the entirety of the granted easement, and the smaller road easement would constitute the least burden on Cottonwood's property consistent with Barlow's reasonable needs.

In reaching its decision, the trial court did not cite any existing law authorizing a court to partially extinguish a granted easement based on the court's determination of the dominant tenement's reasonable needs.[4] Instead, the court concluded that its action was justified by "a reasonable extension" of the decision in *Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697 [43 Cal.Rptr.2d 810] (*Scruby*). On appeal, Barlow contends "*Scruby* does not provide authority to [partially] terminate an otherwise valid easement." We agree.

In *Scruby*, the plaintiffs owned some land with a single family home in the Napa Valley. (*Scruby, supra*, 37 Cal.App.4th at p. 700.) The defendant owned and operated a winery on land adjacent to the plaintiff's property. (*Ibid.*) The only access to the plaintiffs' landlocked property from the highway was over a nonexclusive 52-foot-wide roadway and utility easement across the defendant's property that ended in a 100-foot-diameter cul-de-sac, which the defendant's predecessor had deeded to the plaintiffs. (*Id.* at pp. 700–701.) The plaintiffs actually used only a 15-foot-wide area of the easement for access to their property. (*Id.* at p. 706.) Nevertheless, after the defendant placed water tanks and planted grapevines within the area covered by the easement that the plaintiffs were not using, the plaintiffs filed a complaint seeking to compel their removal and to enjoin the defendant from interfering with the plaintiffs' use of the easement. (*Id.* at pp. 701, 706.) The trial court denied the plaintiffs relief because the defendant's use of the property covered by the easement was not interfering with the plaintiffs' use of that portion of the easement necessary for ingress and egress to the plaintiffs' property. (*Id.* at pp. 701–702.)

The Court of Appeal affirmed the trial court's decision, holding "that a deed granting a nonexclusive easement of a specified width does not, as a matter of law, give the owner of the dominant tenement the right to use every portion of the easement. . . . [T]he owner of the servient tenement [has] the

---

[4] "The land to which an easement is attached is called the dominant tenement; the land upon which a burden or servitude is laid is called the servient tenement." (Civ. Code, § 803.)

right to place improvements upon the easement as long as they do not unreasonably interfere with the right of the owner of the dominant tenement to ingress and egress." (*Scruby, supra*, 37 Cal.App.4th at pp. 700, 708.) In reaching this conclusion, the court noted (among others) the following "controlling principles of law": (1) "The owner of the dominant tenement must use his or her easements and rights in such a way as to impose as slight a burden as possible on the servient tenement"; (2) "Every incident of ownership not inconsistent with the easement and the enjoyment of the same is reserved to the owner of the servient estate"; (3) "The owner of the servient estate may make continued use of the area the easement covers so long as the use does not 'interfere unreasonably' with the easement's purpose"; and (4) "An obstruction which unreasonably interferes with the use of a roadway easement can be ordered removed 'for the protection and preservation' of the easement." (*Id.* at pp. 702–703.) Relying on these principles, the court concluded that the plaintiffs had "*not* been granted the right to exclusive use of each and every square inch of the easement area. Rather, [the defendant] may make continued use of the easement area although it may not do anything that unreasonably interferes with [the plaintiffs] having access to their property." (*Id.* at p. 706.) Because "the [trial] court's finding that [the defendant's] use of the easement area had not unreasonably interfered with [the plaintiffs'] right of ingress and egress was fully supported by substantial evidence," the finding was "binding on appeal." (*Ibid.*) In a footnote, the Court of Appeal noted that the determination that the defendant's "current use of a portion of the easement does not interfere with [the plaintiffs'] right of ingress and egress to their property as presently developed" did *not* result in a "pro tanto extinguishment of the granted easement." (*Id.* at p. 706, fn. 2.)

 In California, "[i]t is axiomatic that cases are not authority for propositions not considered." (*People v. Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].) Because *Scruby* did not consider whether a court can partially extinguish a granted easement if the evidence shows that the owner of the dominant tenement does not reasonably need, either now or in the future, the entirety of the easement, *Scruby* is not authority for the proposition that a court has such power.

Cottonwood contends, however, that the trial court's judgment here should be affirmed as a "[l]ogical [e]xtension" of the legal principles applied in *Scruby*. (Underlining and boldface omitted.) In essence, it is Cottonwood's view that where the evidence shows that the owner of the dominant tenement is not using the entirety of a granted easement, the owner of the servient tenement may make reasonable use of the part the dominant owner is not using, but where the evidence further shows that there is no reasonable likelihood the dominant owner will be able to use the entirety of the easement

in the future, the court has the power to extinguish that part of the easement that it determines is not reasonably needed to service the dominant tenement.

The legal principles applied in *Scruby* cannot be logically "extended" to sanction the *extinguishment* of a granted easement, either in whole or in part, against the will of the easement owner. Neither *Scruby* nor any of the legal principles on which the Court of Appeal relied in *Scruby* dealt with, let alone authorized, *extinguishment* of a granted property right just because, in the court's view, the owner of that right does not appear to need it, either now or in the future. *Scruby* dealt with the scope of *use* of an easement, not its continued *existence*.

■ It has always been the law in California that "[a]n easement acquired by deed is not lost by mere non-user. 'It must be accompanied with the express or the implied intention of abandonment, and the owner of the servient estate, acting upon the intention of abandonment and the actual non-user, must have incurred expenses upon his own estate. The three elements, non-user, intention to abandon, and damage to the owner of the servient estate, must concur in order to extinguish the easement.' " (*Smith v. Worn* (1892) 93 Cal. 206, 212 [28 P. 944].) Here, there was no evidence Barlow intended to abandon any part of the easement Gatchett granted him. Instead, what the evidence showed was that the owner of the servient tenement changed the plans for the development of the servient tenement in such a way as to make it unlikely that Barlow will be able to use the entirety of the easement he was granted. Thus, Cottonwood's argument here rests on the premise that "changed circumstances over the history and development of the" servient tenement can result in the partial extinguishment of a granted easement, without the dominant owner intending to abandon the easement. In other words, the owner of the servient tenement can, by making a part of a granted easement for all practicable purposes unusable, compel the extinguishment of that part of the easement *against the will* of the dominant owner. No California case, or any logical extension of a California case, supports this premise.

■ Cottonwood argues "the public policy in favor of putting land to beneficial use" supports the trial court's decision here. It is true that California law recognizes a " 'rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation.' " (*Kellogg v. Garcia* (2002) 102 Cal.App.4th 796, 803 [125 Cal.Rptr.2d 817].) What Cottonwood fails to recognize, however, is that even if Barlow's retention of the easement Gatchett granted him in 2002 prevents Cottonwood from building out the remaining five residential lots in the Cottonwood Creek Meadow subdivision (because the county will not issue building permits with the original easement in place), this situation is the result of Cottonwood's predecessor

choice to subdivide the servient tenement in a manner that required abandonment or at least reduction of the Gatchett Lane easement to complete the development. There was no evidence Cottonwood's predecessor was compelled to design the subdivision the way it was designed. Presumably the subdivision could have been designed so that Manzi Way was laid out on that portion of the servient tenement covered by the Gatchett Lane easement (although such a design might have resulted in fewer lots). Thus, if we were to accept Cottonwood's public policy argument, we would be sanctioning the partial extinguishment of a granted easement when it was the voluntary, unilateral actions of the servient owner that rendered a portion of the servient tenement covered by the easement unusable. Whatever preference there is in California law to promote the productive use of land, it does not operate to require such a result as the one Cottonwood advances here.

■ For the foregoing reasons, we conclude the trial court erred in determining that the partial extinguishment of Barlow's easement was justified by an extension of the decision in *Scruby*.

## II

### *Illegality*

Cottonwood contends the trial court's decision can be justified by the "body of law that states that an easement cannot be used for illegal purposes" because the evidence showed that a county road using the entirety of the 60-foot Gatchett Lane easement "would not be permitted either now or in the future."

■ This argument lacks merit because none of the cases Cottonwood cites approved the extinguishment, either in whole or in part, of an easement based on illegal use. While the owner of a dominant tenement may be enjoined from using an easement where that use is illegal—for example, using an easement for the keeping of horses in violation of a municipal ordinance that restricts the keeping of horses on residential property—such an easement is not void for illegality. (*Baccouche v. Blankenship* (2007) 154 Cal.App.4th 1551, 1557–1559 [65 Cal.Rptr.3d 659].) Here, at most the evidence showed that there is no reasonable prospect that the 60-foot-wide road easement will ever be used as a county road because the county will not approve a county road on the easement with Manzi Way now lying less than 50 feet to the south. The cases on which Cottonwood relies do not support even the partial extinguishment of the easement based on this showing.

## III

*Apportionment of Easement Rights*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with instructions to enter judgment in favor of Barlow. Barlow shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

Mauro, J., and Hoch, J., concurred.

---

[*]See footnote, *ante*, page 1501.

APPENDIX

APPENDIX A

BEST COPY AVAILABLE

APPENDIX B

APPENDIX C

EXHIBIT C
PRIVATE EASEMENT

BEING A PORTION OF PARCELS 3, AS SHOWN ON PARCEL MAP 833-78, RECORDED IN BOOK 15 OF PARCEL MAPS AT PAGE 147, SHASTA COUNTY RECORDS, IN THE UNINCORPORATED TERRITORY OF SHASTA COUNTY, CALIFORNIA

FOR
*Barlow*
BY
DUANE K. MILLER
CIVIL ENGINEER INC.
P.O. BOX 1307
ANDERSON, CALIFORNIA 96007
PH. (530) 365-6610
FAX (530) 365-6551

DATE: 6-10-11

JUNE 10, 2011 SCALE: 1" = 60' SHEET 1 OF 1

86

*APPENDIX D*